PRICE, Judge.
Defendant has taken this appeal from a judgment of the district court awarding to plaintiff the amount sued for under a hospital indemnity insurance policy, plus penalties and attorney’s fees.
Plaintiff, Dayton I. Carlisle, purchased a policy of insurance from M. H. Pierce, agent for defendant, Washington National Insurance Co., on September 28, 1966, in Coushatta, Louisiana. Subsequently, plaintiff was confined to Huckabay Memorial Hospital in Coushatta from February 21, 1969 through March 11, 1969. On March 25, 1969, a claim under the policy for the amount of $406.98 was forwarded to the defendant insurer, which the insurer refused to pay, contending the insured made false statements in his application for coverage which barred his right to recover under the policy.
Plaintiff filed this action on September 16, 1959, seeking recovery of policy benefits of $406.98, and due to a lapse of over thirty days without payment by the insurer after receipt of written claim under the policy, a penalty of $406.98 and reasonable attorney’s fees. Washington National Insurance Company answered, admitting it received the claim submitted by the insured, but denying plaintiff’s right to recover under the policy by alleging in a reconventional demand that the insured falsely asserted in his application for insurance that he had not been under a doctor’s care or confined to a hospital for the preceding two years and that he was in good health and free from any injury, whereas, in truth and fact, he was hospitalized for an illness during this period. Defendant urges these misrepresentations were made with an intent to deceive and resulted in an increased risk to the company. The insurer seeks rescission of the policy and a return of all payments made thereunder in excess of premiums paid by the insured. In answer to defendant’s demand in reconvention, plaintiff denied having made false statements, pointing out that the application form was completed by the defendant’s agent, whose transcribed response did not conform to that actually given by the plaintiff.
During the course of the trial on the merits, plaintiff responded to the recon-ventional demand of defendant by filing exceptions of no right and no cause of action. The exception of no cause of *420 action was sustained, resulting in dismissal of the defendant’s reconventional demand.
After a trial on the merits judgment was rendered and signed in favor of plaintiff for the sum of $406.98 claimed under the insurance policy, together with a like sum as penalties and $600.00 for attorney’s fees.
From this judgment the defendant has perfected this suspensive appeal, specifying the lower court erred in the following particulars: in failing to find plaintiff made false statements in his application for insurance, thus barring recovery under the contract; in failing to grant a rescission of the insurance contract and a recovery of benefits paid thereunder to the plaintiff; in assessing penalties and attorney’s fees against the insurer; and in disallowing certain evidence which should have been admissible as reflecting on the credibility of the plaintiff as a witness. Plaintiff has answered and has filed a motion for damages for frivolous appeal.
The following is a resume of the facts surrounding the initiation of the policy in question and the pertinent testimony contained in the record:
M. H. Pierce, an agent for the defendant insurance company, solicited the sale of the policy in question and prepared the necessary application form which was in turn signed by Carlisle. On trial of the matter, Pierce gave contradictory testimony, first stating that he discussed the matter with plaintiff’s wife initially and obtained all of the necessary information for him to use in preparing the application form from her out of the presence of her. husband. Later in his testimony, while on direct examination and in answer to questions by the attorney for the defendant insurance company, Pierce stated that both Mr. and Mrs. Carlisle were present when he obtained the false responses in the application form, and that his source of information was Mr. Carlisle.
Carlisle, his wife, and three other witnesses who declared they were present in Carlisle’s store building at the time that Pierce prepared the application form, all testified that Pierce asked Carlisle if he had been hospitalized for the past two years, and that Carlisle replied that he had been in the Huckabay Clinic for treatment for bronchial pneumonia, and that he could get any additional information regarding this from the Clinic.
Defendant, in an attempt to discredit the testimony of Carlisle, introduced, subject to a general objection made by plaintiff’s counsel, a number of applications made to other life and accident insurance companies for other policies tending to show that plaintiff had made false statements in all of these applications. Defendant also filed in evidence, subject to the same objection, interrogatories and answers thereto propounded to the various companies who had issued insurance policies to the plaintiff over a period of time reaching back to the year 1964. These interrogatories disclose that plaintiff had numerous periods of hospitalization and had collected benefits from all of the policies far in excess of the premiums paid thereon.
In his reasons for judgment the trial judge ruled this evidence inadmissible and concluded that the testimony of the defendant’s agent, Pierce, was unworthy of belief because of his obvious and flagrant contradictions in depicting his source of information in preparing the application form. The court further was of the opinion that although the responses in the application for insurance were in fact inaccurate, once the plaintiff had produced evidence placing the blame for the misstatements upon the agent for the insurance company who transcribed all answers to questions contained in the application form, then the burden rests on the insurer to prove the false statements were made by the insured with intent to deceive and the information not included *421 was material and would have affected the issuance of the policy.
We can find no error in the trial judge’s conception of the principles of law controlling. The statutory source of the law is contained in La.R.S. 22:619 (as amended by Act 125 of 1958), providing as follows :
“A. Except as provided in Subsection B of this Section and R.S. 22:692, no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive.
“B. In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.”
In the Third Circuit case of Fruge v. Woodmen of World Life Insurance Society, 170 So.2d 539 (La.App. 3d Cir. 1965), the court discussed the responsibility of the agent in preparing the application for the insured as follows:
“The rule also prevails in this state that when the agent of an insurer, acting within the scope of his authority, proceeds to fill out the blanks in an application for a policy of insurance, the acts, representations and mistakes of that agent are considered to be those of the insurance company. In such a case if the agent by mistake, fraud or negligence inserts erroneous or untrue answers to the questions contained in the application, these representations bind the insurer but are not binding upon the insured, provided that the insured was justifiably ignorant of the erroneous answers, had no actual or implied knowledge thereof, was guilty of no bad faith or fraud, and had no intent to deceive the insurer. Harris v. Guaranty Income Life Ins. Co.,226 La. 152, 75 So.2d 227; Telford v. New York Life Ins. Co., 227 La. 855, 80 So.2d 711; Oliver v. Penn. Life Ins. Co., 146 So.2d 246 (La.App. 3 Cir.); Gleason v. Bankers Life and Casualty Co., La.App. 2 Cir., 147 So.2d 86.”
The trial judge found that the evidence presented by defendant’s own witness, Pierce, clearly established that Carlisle made no representation to the agent that he had not been hospitalized within two years, and therefore, any other evidence tending to discredit plaintiff’s testimony would be immaterial in this case.
The testimony of Pierce referred to by the trial judge so strongly justifies this conclusion by the court that we quote the following excerpt from the transcript:
“A. The answers to the question propounded are in your handwriting?
“Q. Yes, sir.
“A. Question three says, “Have you or any eligible applicant listed above, if any, been under doctor’s care or confined in a hospital during the past two years?’ Yes or no and the answer is written ‘No’. That is your handwriting?
“A. Yes, sir.
“Q. What did Mr. Carlisle tell you?
“A. I talked to Mrs. Carlisle about this insurance. Not Mr. Carlisle.
“Q. Wasn’t he there?
“A. Afterwards. When I sold the policy, yes, sir. He was there when I sold the policy.
“Q. When this application was signed by Dayton I. Carlisle, was Dayton I. Carlisle there?
*422 “A. Yes, sir.
“Q. And he did sign the application?
“A. Yes, sir.
“Q. Did he sign it on the date that you put up here, 9/28/66?
“A. Yes, he did.
“Q. Did you ask him 'Have you or any eligible applicant listed above, if any, been under doctor’s care or confined in the hospital during the past two years?’
“A. I had went over it * * * I didn’t ask him * * * wait a minute, can I explain what I am talking about * * *
“Q. You answer me first and then can * * * did you * * *
“A. No, sir, I did not.”
Although it is argued by counsel for appellant that Pierce later in the case changed his testimony and stated both Mr. and Mrs. Carlisle gave him the information and the court was in error in its summation of the effect of this witness’ testimony, we believe his first version given under cross-examination should prevail. We also concur with the trial judge that his diametrically opposed version given one day later only weakened the credibility of this testimony. No explanation was offered by the witness showing any logical reason for such a variance.
Accepting, arguendo, that the evidence ruled inadmissible by the trial judge should have been allowed, the defendant has not proven any representation was made by Carlisle. This fact has been clearly admitted by its own agent, Pierce, whose testimony binds defendant.
We, therefore, find no error in the conclusion reached by the trial judge in this regard. We do not find the actions of the defendant to have been arbitrary or capricious to warrant the assessment of penalties and attorney’s fees. The company was in possession of an application which on its face indicated a misrepresentation existed.
In a case analogous to the situation under consideration, Manuel v. American Income Life Insurance Co., 212 So.2d 169 (La.App. 3d Cir. 1968), our brothers of the Third Circuit denied penalties, holding that an insurer, after discovering a misstatement in an application for insurance sufficient to void a policy, could sincerely believe that it was given fraudulently by the insured. We concur in this view and are of the opinion the insurer has the right to a judicial interpretation of a doubtful claim without being subjected to penalties. We find no merit in plaintiff’s request for damages for frivolous appeal.
For the foregoing reasons, the judgment appealed from is amended to reject plaintiff’s demands for penalties and attorney’s fees, and as amended, is affirmed at appellant’s cost.
Before AYRES, BOLIN, PRICE, HEARD, and HALL, JJ.