625 So.2d 716 (1993)
GRAHAM RESOURCES, INC., et al.
v.
LEXINGTON INSURANCE CO., et al.
No. CA 92 1730.
Court of Appeal of Louisiana, First Circuit.
October 15, 1993.
*717 Phillip A. Wittmann, Stephen H. Kupperman, Judy Y. Barrasso and John W. Borkowski, New Orleans, for plaintiffs-appellants.
Vincent P. Fornias, Baton Rouge, for defendants-appellees.
D. Russell Holwadel, Jesse R. Adams, Jr., New Orleans, for Americans.
Patrick Juneau, Lafayette, for Lexington.
Before CARTER, GONZALES and WHIPPLE, JJ.
GONZALES, Judge.
This matter comes before us on a review of a summary judgment granted by the trial court. As the Louisiana Supreme Court has said with regard to the standard of review in Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991):
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of *718 whether summary judgment is appropriate. GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711, 714 (5th Cir. 1985); McCrae v. Hankins, 720 F.2d 863, 865 (5th Cir.1983); Wright, Miller & Kane, Federal Practice and Procedure, § 2716, at 125 (Supp.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981). Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Vermilion Corp., supra; see also United States v. Diebold, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Thornbrough v. Columbus and Greenville R. Co., 760 F.2d 633, 640 (5th Cir.1985). The party who defended against the motion for summary judgment must have his properly filed allegations taken as true and must receive the benefit of the doubt when his assertions conflict with those of the movant. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Thornbrough, supra; Wright, Miller & Kane, supra.

FACTS
The facts of the underlying actions can be summarized as follows. Several Graham entities with headquarters in Covington, Louisiana were involved in marketing investments in oil and gas partnerships or funds in the 1980's. Today these entities are in the business of managing oil and gas properties. Graham marketed and managed two different forms of investments on a nationwide basis which were known as Growth Funds and Income Funds. Each of the defendant insurance companies had issued insurance to Graham in the form of comprehensive general liability policies during the period in question between November 1983 and August 1989. Each of the policies provided coverage for advertising injuries which included claims of unfair competition.
The underlying actions, from which this issue of a duty to defend arises, were brought by consumers claiming Graham had engaged in various federal and state law violations, including claims of unfair competition, false advertising, negligent misrepresentation, mismanagement, deceptive trade practices, and securities fraud. The gravamen of the complaints is that Graham made material misrepresentations and misleading statements in its advertising materials. In granting defendant insurance companies' motions for summary judgment the trial court looked to the term "unfair competition" in the policy, and the context in which it was used, rather than relying on the statutory language of the Louisiana Unfair Trade Practices And Consumer Protection Law, La. R.S. 51:1401 et seq. and its various interpretations.
In its appeal of the granting of the motion for summary judgment, Graham Resources makes the following assignments of error:
1.) The trial court erred in failing to recognize that an insurer which repeatedly and unequivocally admits that it has an unqualified duty to defend is bound by that admission and has waived its right to contest its defense obligation.
2.) The court below erred in concluding that the narrow and restrictive common law definition of unfair competition should be applied to an undefined ambiguous term to restrict the coverage provided under Louisiana law by comprehensive general liability policies.
3.) The trial court erred in failing to find a duty to defend where a possibility of coverage exists.

ASSIGNMENT OF ERROR NO. 1
Graham argues that Hartford "made numerous unequivocal and unqualified admissions of its obligation to defend Graham in the underlying actions. Hartford is bound by these admissions and waived any right to contest its defense obligations." Graham also states: "Courts have long recognized that an insurer's unqualified admissions of *719 coverage or a defense obligation are binding and result in a waiver of any right to subsequently contest the obligation." Graham cites as support for this argument Tate v. Charles Aguillard Insurance & Real Estate, Inc., 508 So.2d 1371 (La.1987). Although the Tate court does state "Waiver may apply to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered," the statement must be read within the context of the case. Tate, 508 So.2d at 1375. A reading of Tate reveals that the issue in the case was whether an insurer of an animal under a livestock mortality policy may tacitly waive a condition precedent that the animal must be in sound health at the inception of the policy. In Tate, the court merely found that the insurer could waive a condition precedent to the inception of the policy by its actions. However, the Tate court found that the plaintiff did not meet the burden of proof to show that the insurer did indeed waive the condition precedent to the policy. Graham also cites Swain v. Life Insurance Company Of Louisiana, 537 So.2d 1297 (La.App. 2d Cir. 1989), writ denied, 541 So.2d 895 (La.1989). In Swain, the court found that an insurer could not deny coverage on the basis of a "sound health" provision when its agent had reason to suspect that the insured's health was dubious, yet accepted the premiums and issued the policy without requiring the insured to read and fill out the application form and without initiating further inquiry or investigation into the insured's condition. 537 So.2d at 1301. In Swain, as in Tate, the issue was the waiver of a condition precedent to the policy being issued, not a waiver to extend coverage to areas not contemplated by the policy. This case does not lend support to Graham's position.
Graham cites Carlisle v. Washington National Insurance Company, 250 So.2d 418 (La.App. 2d Cir.1971), for the proposition "Courts have long recognized that an insured's unqualified admission of coverage or a defense obligation are binding and result in a waiver of any right to subsequently contest the obligation." In Carlisle, the plaintiff filed suit seeking recovery of policy benefits which were denied by the insurer because the insured's application falsely asserted that he had been in good health for the preceding two years. On rehearing, the court found that the plaintiff answered the questions about his health correctly, but the answers were incorrectly recorded by the insurance agent. The plaintiff did not know the answers were incorrect until he made a claim for benefits under the policy. The court found that the agent's knowledge of the actual facts concerning the application for insurance were imputable to the principal under the rule that the insurance agent acts as an agent for the insurer when he assumes the responsibility of filling out applications for insurance coverage. 250 So.2d at 424. This case does not support Graham's position. In addition to the Louisiana cases discussed above, the insured relies upon federal court cases and out-of-state cases in its waiver argument. Neither federal jurisprudence nor out-of-state jurisprudence is binding on this court.
The general rule is that estoppel is not favored under our law. Wilkinson v. Wilkinson, 323 So.2d 120, 126 (La.1975). This court, in Balehi Marine v. Fireman's Ins. Co. of Newark, 460 So.2d 16, 17 (La.App. 1st Cir.1984), writ denied 462 So.2d 654 (La. 1985), found that "[t]he party seeking to recover under an insurance policy has the burden of pleading and proving that his claim falls within the policy ... This is true despite the fact that defendant adjusted the claim, told [the insured] to make the repairs, and even tendered a check to settle the claim. `[E]stoppel cannot be invoked to bring within the coverage of a[n insurance] policy ... risks not included nor contemplated by its terms.'" (citations omitted). In Hunter v. Office of Health Services, 385 So.2d 928 (La. App. 2d Cir.), writ denied 393 So.2d 737 (La.1980), the plaintiff contended that the insurance company, "by acting as though it had coverage up until a few days before trial, is now estopped from denying coverage." 385 So.2d at 937. The Hunter court stated: "The application of the doctrine of estoppel has not been allowed in the field of insurance law in this state to extend or enlarge coverage *720 beyond that set forth in the policy ... To grant the plea of estoppel as requested by the state would in effect be an extension of coverage of the Continental policies." 385 So.2d at 937-938. (citations omitted). To grant the plea of waiver as requested by Graham would in effect be an extension of coverage of the Hartford policies. In view of these recognized principles, equitable estoppel is not proper under the circumstances presented. See Hunter v. Office of Health Services, 385 So.2d at 937.

ASSIGNMENTS OF ERROR NO. 2 AND 3
This case involves the interpretation of a coverage clause in insurance contracts. The Louisiana Supreme Court provides guidance in this area in Schroeder, 591 So.2d at 345, as follows:
It is well settled in our law that general rules of interpretation apply to insurance policies in the same way that they apply to other contracts. Massachusetts Mutual Life Ins. v. Nails, 549 So.2d 826 (La.1989); Savoie v. Fireman's Fund Insurance Co., 347 So.2d 188, 191 (La.1977). A conventional obligation, such as created by an ordinary contract or insurance policy, is a legal relationship whereby the obligor is bound to render a performance in favor of the obligee. La.C.C. art. 1756. In a conventional obligation, the nature of that relationship is governed by the agreement of the parties. Hence, the interpretation of a contract is the determination of the common intent of the parties. La.C.C. art. 2045; Hurst v. Ricard, 514 So.2d 14, 16 (La.1987). Under civilian methodology, the interpretation of a contract is similar to the interpretation of a statute, and vice versa. Id., at 17; Geny, Methode d'Interpretation et Sources en Droit Prive' Positif, No. 98, p. 182 (2d ed. La.St.L.Inst. trans.1963); see also La.C.C. art. 2046, Comment (c). Civil Code article 2045 further provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." Also, in determining the meaning of the words of a contract, they are to be given their generally prevailing meaning. La.C.C. art. 2047; Savoie, supra, [347 So.2d] at 191; Taylor v. State Farm Mutual Auto Insurance Co., 248 La. 246, 178 So.2d 238, 241 (1965). When the meaning of the words are clear then the courts should look no further in determining the intent of the parties. La.C.C. art. 2046; Soverign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982, 985 (La.1986). Where the meaning of a contract is to be determined solely from the words upon its face, without the necessity of extrinsic evidence, the appellate courts are as competent to review the evidence as the trial court, and no special deference is usually accorded the trial court's findings. Investors Associates, Ltd. v. B.F. Trappey's Sons, 500 So.2d 909 (La.App. 3d Cir.), writ denied 502 So.2d 116 (La.1987); W. Freedman, Richards on Insurance. § 11:2(i) at 255 (1990).
The parties agree that the insurance policies provide:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent.... (emphasis added).
They also agree that advertising injury is defined in the policies as:
Injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan. (emphasis added).
Unfair competition is not defined by the policies. Our research has disclosed no Louisiana cases interpreting unfair competition coverage for advertising injuries. Therefore, *721 we look to the general law of insurance contract interpretation. The intention of the parties to an insurance contract is to be determined in accordance with the plain, ordinary and popular sense of the language used in the agreement and by giving consideration on a practical, reasonable and fair basis to the instrument in its entirety. An insurance policy should not be given an interpretation which would enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or which would lead to an absurd conclusion. The words of insurance contracts and policies should be given their general and popular interpretation and not that which is strained and unusual. Jim Carey Distributing Co. v. Zinna, 589 So.2d 526, 528 (La.App. 1st Cir.1991). In reaching its decision that the insurance companies had no duty to defend Graham under the policies, the trial court noted that the term unfair competition, as used in the context of the insurance policies at issue, has traditionally been limited to misappropriation of a competitor's commercial advantage. We find that the ruling of the trial court was legally correct.
We note that, although there are no prior Louisiana cases interpreting insurance coverage for unfair competition in the context of advertising injury, in all of the out-of-state cases we have reviewed, the courts have ruled that unfair competition, in that context, does not refer to conduct prohibited by the unfair business practices statutes.
It should be noted that as a matter of public policy people should not be allowed to insure themselves against acts prohibited by law such as securities fraud. In Bank of the West v. Superior Court, 2 Cal. 4th 1254, 833 P.2d 545, 10 Cal.Rptr.2d 538 (1992), the California Supreme Court stated in pertinent part:
When the law requires a wrongdoer to disgorge money or property acquired through a violation of the law, to permit the wrongdoer to transfer the cost of disgorgement to an insurer would eliminate the incentive for obeying the law. Otherwise, the wrongdoer would retain the proceeds of his illegal acts, merely shifting his loss to an insurer.
In Bank of the West the plaintiff insurance companies sued for a declaratory judgment determining their obligations under a comprehensive general liability policy issued to Central Bank. Consumers sued the bank alleging, among other claims, violations of the Unfair Business Practices Act. The court found that the policy reference to unfair competition did not cover claims under a state statute prohibiting unfair business practices. The court found:
The majority of courts have concluded that the term "unfair competition" as used in policy language defining "advertising injury" refers to the common law tort of unfair competition rather than to conduct prohibited by unfair business practices statutes ... The common law tort of unfair competition is generally thought to be synonymous with the act of "passing off" one's goods as those of another. (emphasis original).
Bank of the West, 2 Cal.4th 1254, 10 Cal. Rptr.2d 538, 833 P.2d at 551. A Washington appellate court, in the case of Boggs v. Whitaker, Lipp & Helea, Inc., P.S., 56 Wash.App. 583, 784 P.2d 1273 (1990), rev. denied 114 Wash.2d 1018, 791 P.2d 535 (Wash.), was faced with similar facts and identical policy language as in the case sub judice and found no coverage. The Boggs court found that "[h]ere, the complaints alleged only unfair and deceptive practices. There is nothing in the record to suggest that [the defendant company's] deceptive advertising was intended to give the company an advantage over competitors, or that it actually harmed any competitors." Boggs, 784 P.2d at 1276.
Accordingly, for the foregoing reasons we affirm the decision of the trial court.
AFFIRMED.