# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-00116-SCT

*DELTA PRIDE CATFISH, INC.*

*v.*

*HOME INSURANCE COMPANY, CHICAGO INSURANCE COMPANY, CONSTITUTION STATE INSURANCE COMPANY, FIREMAN'S FUND INSURANCE COMPANY, SAFETY NATIONAL CASUALTY CORPORATION, SCOTTSDALE INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, INTERNATIONAL INSURANCE COMPANY, GENERAL STAR INDEMNITY COMPANY, AND MISSISSIPPI INSURANCE GUARANTY ASSOCIATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/29/94 |
| TRIAL JUDGE: | HON. NATHAN P. ADAMS, JR. |
| COURT FROM WHICH APPEALED: | SUNFLOWER CO. CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | RICHARD G. NOBLE |
| | JEROLD OSHINSKY, |
| ATTORNEYS FOR APPELLEES: | RICHARD M. EDMONSON |
| | LUTHER T. MUNFORD |
| | HERMAN M. HOLLENSED, JR. |
| | WILLIAM C. MORRIS |
| | ROBERT KLEIN |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 6/26/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/17/97 |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## I. <u>INTRODUCTION</u>

¶1. Appellant Delta Pride Catfish, Inc. (hereinafter Delta Pride), was sued in three separate class actions for price fixing. Delta Pride then sued for a declaratory judgment that its primary comprehensive general liability insurer, its umbrella carriers, and its excess carriers had a duty to defend and/or indemnify Delta Pride with regard to the underlying price-fixing suits. The appellees/insurance companies sued for summary judgment that they had no duty to defend and/or indemnify Delta Pride. The chancellor granted summary judgment in favor of the appellees and dismissed Delta Pride's suit for declaratory judgment.

¶2. The facts are not in dispute. The main issue in this case is a matter of contract interpretation: whether the price-fixing suits fall under the comprehensive general liability policy's coverage for "advertising injury", given that the policy defines "advertising injury" as "injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of . . . unfair competition?"

¶3. This Court holds that the chancellor correctly found that no coverage existed because Delta Pride's price-fixing activities were separate from its advertising activities and did not constitute unfair competition within the meaning of the "advertising injury" clause of the policy at issue. In addition, the judgment of the trial court was in accord with other jurisdictions that have considered similar contracts in similar cases. Moreover, as a matter of public policy, this contract can not be interpreted to allow Delta Pride insurance coverage for its intentional, illegal activities. For these reasons, the judgment of the chancellor denying coverage to Delta Pride is affirmed.

## II. <u>STATEMENT OF THE CASE</u>

¶4. On March 30, 1994, Delta Pride filed a complaint in the Sunflower County Chancery Court against its primary comprehensive general liability insurer, Home Insurance Company (hereinafter Home), and its excess carriers: Chicago Insurance Company; Constitution State Insurance Company; Federal Insurance Company; Fireman's Fund Insurance Company; First State Insurance Company; General Star Indemnity Company; International Insurance Company; Safety National Casualty Corporation; Scottsdale Insurance Company; and, Mississippi Insurance Guaranty Association, which was apparently a party due to the insolvency of excess carrier Integrity Insurance Company.

¶5. Delta Pride alleged that it been sued for price fixing in three class actions: 1) *In re: Catfish Antitrust Litigation*, No. 2:92CVO73-D-O (N.D. Miss.) (hereinafter Mississippi Catfish Action); 2) *Earl Hollingshead, et al. v. Delta Pride Catfish, et al.*, No. CV-92-1711 (Ala. Cir. Ct., Mobile County) (hereinafter Alabama Catfish Action); and, 3) *Catfish Products Case*, No. 2793 (Cal. Sup. Ct., San Francisco County) (hereinafter California Catfish Action). The complaint further alleged that Home had a duty to defend Delta Pride in these suits pursuant to a clause in the policy that covered "advertising injury." The policy definition of "advertising injury" was "injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of . . . unfair competition." Delta Pride also contended that umbrella carrier Safety National owed a duty to pay "ultimate net loss" (including indemnifying Delta Pride and paying its legal fees) in excess of the Home policy. Finally, Delta Pride asserted that the aforementioned excess carriers also owed similar duties.

¶6. Based on these allegations, Delta Pride sought a declaratory judgment for these insurance

companies to pay the legal fees incurred as a result of the class action suits or furnish Delta Pride with a defense to the suits, and to indemnify Delta Pride for liability arising from the suits. On September 22, 1994, Home moved for summary judgment and alleged that the underlying actions against Delta Pride did not trigger a duty to defend under the "advertising injury" provisions of Home's policies. The excess carriers also moved for summary judgment. On October 31, 1994, Delta Pride filed a cross-motion for partial summary judgment on the duty to defend. On November 1, 1994, Delta Pride moved for sanctions against Home and alleged that Home had not complied with a discovery order.

¶7. On December 29, 1994, the chancellor granted the defendants' motion for summary judgment and dismissed Delta Pride's motion for sanctions as moot. Delta Pride appeals from that judgment and raises the following issues for consideration by this Court:

**A. Whether the Chancery Court of Sunflower County erred in deciding that, under Mississippi law, the underlying actions asserted against Delta Pride Catfish, Inc. were not covered under the advertising injury provisions of Delta Pride's insurance policies and accordingly, in granting summary dismissing the action?**

**B. Whether the Chancery Court of Sunflower County erred in refusing to grant partial summary judgment on the duty to defend in favor of Delta Pride Catfish, Inc.?**

## II. LEGAL ANALYSIS

¶8. The standard of review when a trial court issues a summary judgment is as follows:

> We review de novo the record on appeal from a grant of a motion for summary judgment. In *Brown v. Credit Center, Inc.*, 444 So. 2d 358, 362 (Miss. 1983), we interpreted Rule 56 and the standards that the trial courts should use in considering a motion for summary judgment. We explained that

> The trial court must review carefully all of the evidentiary matters before it -- admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.

*Gulf Guaranty Life Insurance Co. v. Duett*, 671 So. 2d 1305, 1307 (Miss. 1996) (quoting *Northern Elec. Co. v. Phillips*, 660 So. 2d 1278, 1281 (Miss. 1995)).

¶9. The policies at issue contained the following provisions:

**II. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE**

(A) The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even

if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

* * *

(D) Additional Definitions

"Advertising Injury" means injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan.

¶10. Whether a liability insurance company has a duty to defend depends upon the language of the policy. "The traditional test" for whether an insurer has a duty to defend under the policy language "is that the obligation of a liability insurer is to be determined by the allegations of the complaint or declaration [in the underlying action]." *State Farm Mutual Automobile Ins. Co. v. Taylor*, 233 So. 2d 805, 808 (Miss. 1970).

¶11. The underlying suits allege that Delta Pride met with its competitors during the 1980's, set minimum prices for catfish products, and adhered to those minimum prices. The only allegation in the underlying suits that can remotely be construed as relating to "advertising" is the following allegation made by the plaintiffs in the Mississippi Catfish Action[1]:

When one or more of the plaintiffs inquired of the defendants with whom they had done business as to why the prices charged for catfish and catfish products were continuing to increase during the 1980's, they were told, for example, that the kill costs more, that there were shortages of large fish, that farmers were raising prices, or that costs were increasing because of the "off flavor" problem.

¶12. Delta Pride contends that the terms "advertising injury" and "unfair competition" are ambiguous, and that the contract should be construed against the insurer and in favor of coverage. Indeed, "[a]ny ambiguities in an insurance contract must be construed against the insurer and in favor of the insured and a finding of coverage." *Nationwide Mutual Ins. Co. v. Garriga*, 636 So.2d 658, 662 (Miss. 1994). However, "[o]ur familiar rule of contract interpretation is that a clear and unambiguous contract will be enforced as written. *Gulf Guaranty Life Insurance v. Duett*, 671 So. 2d 1305, 1308 (Miss. 1996) (citing *Century 21 Deep South Properties, Ltd. v. Keys*, 652 So.2d 707, 717 (Miss.1995)).

A court must effect "a determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties." The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law."

*Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416, 419 (Miss. 1987) (citations omitted). Where the

contract is unambiguous, the "parties are bound by the language of the instrument." ***Id.***

***¶13.*** This Court has not previously interpreted policy provisions like the ones in the case at hand. Because this is a case of first impression, the case law of other jurisdictions is helpful. Most jurisdictions hold that advertising means "widespread promotional activities directed to the public at large." ***Bank of the West v. Superior Court of Contra Costa Co.***, 833 P. 2d 545, 560 n. 9 (Cal. 1992) (citing ***International Ins. v. Florists' Mutual Ins.***, 559 N.E.2d 7, 9-10 (Ill. App. 1990); ***Playboy Enterprises v. St. Paul Fire & Marine Ins. Co.***, 769 F.2d 425, 428-429 (7ᵗʰ Cir. 1985); ***Fox Chemical Co., Inc. v. Great American Ins. Co.***264 N.W.2d 385, 386 (Minn. 1978)).

¶14. The complaint in the Mississippi Catfish Action refers to one or more letters sent to customers regarding high fish prices. Delta Pride asserts that, in response to customer inquiries, it sent three letters to three different customers explaining the higher fish prices. Delta Pride further contends that this activity gives rise to coverage based on the "advertising injury" clause in the policies at issue.

¶15. The record reflects that one of the three letters placed in the record by Delta Pride was sent after the coverage period at issue in this case. Furthermore, although the complaint in the Mississippi Catfish Action refers to one or more letters sent from Delta Pride in response to customer inquiries about high fish prices, this reference does not support an allegation of "widespread promotional activities directed to the public at large." This Court holds that there is no allegation of "advertising" by the underlying plaintiffs in the case at hand.

¶16. Furthermore, even if the allegations regarding the letters in the Mississippi Catfish Action could be construed as "advertising", there must be a causal connection between the "advertising" and the alleged "advertising injury". Where there is no such causal link, this Court, along with the majority of courts that have considered this issue, will deny coverage.

> We believe that the apparent majority rule, under which "advertising injury" must have a causal connection with "advertising activities," best articulates the insured's objectively reasonable expectations about the scope of coverage. This conclusion is partly a matter of interpretation and partly a matter of common sense.

> As a matter of interpretation, the context of the [comprehensive general liability] policy strongly indicates the requirement of a causal connection. The other types of "advertising injury" enumerated in the policy often do have a causal connection with advertising. "Defamation," whether libel or slander, occurs upon publication. "Violation of right of privacy," in the advertising context, is virtually synonymous with unwanted publicity. "Infringement of copyright, title or slogan" typically occurs upon unauthorized reproduction or distribution of the protected material. Reading the term "unfair competition" in this context, an objectively reasonable insured would not conclude that the term "unfair competition" could refer to claims that bore no causal relationship to its advertising activities.

> Moreover, as a matter of common sense, an objectively reasonable insured would not expect "advertising injury" coverage to extend as far as the [appellant] argues it should extend. Virtually every business that sells a product or service advertises, if only in the sense of making representations to potential customers. If no causal relationship were required between "advertising activities" and "advertising injuries," then "advertising injury" coverage, alone,

would encompass most claims related to the insured's business. However, insureds generally expect to obtain such broad coverage, if at all, only by purchasing several forms of insurance, including coverage for "errors and omissions liability," "directors and officers liability," "completed operations and products liability," and/or other coverages available as part of a [comprehensive general liability] policy.

*Bank of the West*, 833 P. 2d at 859-60 (citations and footnotes omitted); *Sentry Ins. v. R.J. Weber Co., Inc.*, 2 F.3d 554, 557 (5th Cir. 1993); *Meyers & Sons Corp. v. Zurich American Ins.*, 545 N.E.2d 1206, 1209 (1989); *Lazzara Oil Co. v. Columbia Casualty Co.*, 683 F.Supp. 777, 780 (M.D.Fla.1988).

¶17. Delta Pride also argues that the term "unfair competition" is ambiguous. Having found that the underlying complaints did not allege advertising or any causally connected advertising injury, this Court need not interpret the meaning of "unfair competition" under the "advertising injury" clause. However, the underlying actions in this case were brought by customers and consumers -- not competitors. Clearly, at a minimum, "unfair competition" must involve "[s]ome substantial component of competitive injury". *Keating v. National Union Fire Ins. Co.*, 995 F. 2d 154, 155 (9th Cir. 1993). This is the view of the majority of courts considering the definition of "unfair competition" in this context. *See Bank of the West*, 833 P. 2d at 551; *Graham Resources, Inc. v. Lexington Ins. Co.*, 625 So. 2d 716 (La. App. Ct 1994). Thus, Delta Pride's argument with regard to the term "unfair competition" is also without merit.

¶18. Finally, as a matter of public policy, Delta Pride cannot purchase insurance coverage for its intentional, illegal activities. "[P]eople should not be allowed to insure themselves against acts prohibited by law." *Graham*, 625 So. 2d at 721.

## IV. <u>CONCLUSION</u>

¶19. There are no material facts in dispute in this case. Delta Pride seeks a legal defense and indemnification from its liability insurers for its illegal price-fixing activities. The question of law presented is whether the allegations in the underlying complaints are covered by the policies at issue. Based on the allegations in the underlying complaints for price-fixing and the policy at issue, this Court holds that, as a matter of law, Delta Pride is not entitled to the coverage it seeks. This is the view expressed by a majority of courts considering similar policies in similar factual situations. Therefore, the trial court's summary judgment in favor of the insurers is affirmed.

¶20. **JUDGMENT IS AFFIRMED.**

**SULLIVAN, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**


 **McRAE, JUSTICE, DISSENTING:**


¶21. The majority affirms the chancellor's granting of summary judgment in favor of the insurers.

Because the terms "advertising activities" and "unfair competition," as set forth in the "Advertising Injury" portion of the insurance contract, are ambiguous, and because summary judgment was prematurely granted in this case, I respectfully dissent.

¶22. An ambiguous term in an insurance policy must be construed against the drafter of the policy and in favor of the insured. *Nationwide Mutual Ins. Co. v. Garriga*, 636 So. 2d 658, 662 (Miss. 1994). An ambiguity in an insurance policy exists when the policy can be interpreted to have two or more reasonable meanings. *See Insurance Co. of North America v. Deposit Guaranty Nat. Bank*, 258 So.2d 798, 800 (Miss. 1972). Further, where a policy is subject to two interpretations equally reasonable, that which gives the greater indemnity to the insured should be adopted. *State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So.2d 1371, 1372 (Miss. 1981); *State Farm Mut. Auto. Ins. Co. v. Taylor*, 233 So.2d 805, 811 (Miss. 1970).

¶23. The policy in question makes no effort to define "advertising activities." The majority has chosen to interpret the meaning of "advertising" as "widespread promotional activities directed to the public at large." Nonetheless, the definition of "advertise" found in Black's Law Dictionary, "any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business," encompasses any form of solicitation, presumably including solicitation of one person. *Black's Law Dictionary* 54 (6th ed. 1990). *See also John Deere Ins. Co. v. Shamrock Indus., Inc.*, 696 F.Supp. 434, 439-40 (D.Minn.1988), *aff'd*, 929 F.2d 413 (8th Cir.1991)(applying law dictionary definition of advertisement to conclude that sending three letters to one customer constitutes advertising). In the policies under review here, "advertising activities" is susceptible to multiple interpretations. "This is quintessential ambiguity and thus a quintessential factual question for resolution by the jury." *Merrimack Mut. Fire Ins. Co. v. McDill*, 674 So.2d 4, 9 (Miss. 1996). *See also Lebas Fashion Imports of USA v. ITT Hartford Ins. Group*, 59 Cal. Rptr. 2d 36, 44-45 (Cal. Ct. App. 1996) (determining that policy term "advertising idea" has multiple reasonable meanings).

¶24. If the letters explaining the higher fish prices were sent to several hundred customers, clearly the insurers could not argue that the actions by Delta Pride did not constitute "advertising activities." However, it is just as reasonable for a normal policyholder to understand "advertising activities" to mean any solicitation, whether to one customer or one hundred. The insurers failed to provide in the policies any limitation on the scope of the meaning of "advertising activities." Exclusion must be plain and explicit, and any ambiguity must be construed against the insurer. If the insurers wanted to limit covered advertising activity to "widespread promotional activities directed to the public at large," as the majority suggests, the insurers easily could have provided such in the policies. Nevertheless, the insurers chose not to provide the exclusion. Because the term "advertising activities" is used within the context of the insuring provisions and not within an exclusion, the term should be interpreted inclusively, with any doubts as to coverage resolved in favor of the insured. *American States Ins. Co. v. Canyon Creek*, 786 F.Supp. 821, 828 (N.D. Cal. 1991); *Insurance Co. of Am. v. Sam Harris Constr. Co.*, 583 P.2d 1335, 1337 (1978).

¶25. Similarly, the term "unfair competition" within the policies under review is ambiguous, and it must also be construed in favor of coverage. "Unfair competition" is neither limited nor defined anywhere within the insurance policies. Further, given the deposition statement by a claims witness for Home Insurance, price fixing could be included within the ordinary understanding of "unfair competition." Accordingly, this Court must interpret the term broadly, and resolve questions about

whether price fixing is a form of "unfair competition" in favor of Delta Pride.

¶26. The procedure followed by the chancellor in this case was flawed. The chancellor ordered the insurers to produce all documents relating to Delta Pride's claims, including internal documents and manuals pertaining to "advertising injury." However, before all of the documents were received by Delta Pride, the chancellor granted the insurers' motion for summary judgment. In this manner, Delta Pride was prevented from fully opposing the insurers' motion for summary judgment. The chancellor below should have at least waited until discovery was complete before he ruled on the insurers' motion. Because the summary judgment was prematurely granted, the chancellor below erred.

¶27. Of paramount concern here is the need for insurers to use clear and unambiguous language in drafting insurance policies. If we allow insurers to continue denying their duty to defend based on poorly defined terms in nebulous policies, we guarantee that these insurers will never have an incentive to provide customers with thorough, comprehensible policies. Using such language as that in the policy under review "allows an insurer to construe the policy in its best interests no matter what the parties originally intended." *Rymal v. Woodcock*, 896 F. Supp. 637, 638 (W.D. La. 1995). This Court should not endeavor to correct ambiguities within insurance policies; that job falls squarely upon the shoulders of the insurance companies. *See Gunn v. Principal Casualty Ins. Co.*, 605 So. 2d 741, 746 (Miss. 1992) (Dan Lee, P.J., dissenting) (recognizing that any ambiguity in an insurance policy is to be strictly construed against the drafter, because the drafter is in a position to correct the ambiguity). The showing made by Delta Pride regarding "advertising activities" and "unfair competition," in the face of the blatantly ambiguous policies in this case, was enough to trigger the duty to defend.

¶28. In conclusion, this Court should find that there is more than one reasonable interpretation of the meaning of "advertising activities" and "unfair competition," therefore making the policies in question ambiguous, necessitating interpretation of the policies against the insurers, and precluding summary judgment against Delta Pride. Because the majority has chosen to ignore the insurers' duty to defend in this case, I dissent.

1. Delta Pride does not contend that any of the allegations in the California Catfish Action or the Alabama Catfish Action referred to an advertising injury within the meaning of the policy. Therefore, with regard to those actions, Delta Pride has not raised any issue for consideration before this Court.