[No. 6357–3–II.   Division Two.   September 5, 1984.]

CEDAR–AL PRODUCTS, INC., *Respondent,* v. ROBERT CHAMBERLAIN, ET AL, *Appellants.*

*Lane J. Wolfley,* for appellants.

*Christopher O. Duffy,* for respondent.

REED, J.—PAWest and Cedar–al are rival manufacturers of pet pillows. Cedar–al sought injunctive relief and damages after PAWest began marketing a pet pillow which Cedar–al claimed imitated the trade dress of its product. In granting Cedar–al's motion for summary judgment, the trial judge decided, as a matter of law, that the pillows so closely resemble each other that an ordinary consumer would likely mistake one for the other. PAWest maintains that the pet pillows are sufficiently different that, as a matter of law, it,

rather than Cedar–al, should have been granted summary judgment. We agree with PAWest.

Cedar–al apparently was the first manufacturer to market a pet pillow filled with cedar shavings. The product consists of an inner pillow filled with shavings, covered with a pillowcase that can be opened and closed at one end. Both the inner pillow and pillowcase are made of burlap. The most prominent feature of the Cedar–al design is a graphic reproduction of a stylized Haida Indian bear printed on the front in brown and orange against a backdrop of natural burlap. Surrounding the bear is a brown and orange rectangular–shaped border, also of Indian design. The name "Cedar–al" is printed under the bear in orange color. At the top of the pillowcase are two large gold button fasteners.

PAWest entered the market after Cedar–al had become well established. Its product also consists of a burlap pillow, covered with a natural burlap pillowcase. Depicted on the front are two large paw prints in brown color. A border on three sides of the pillowcase consists of three alternating brown and red stripes. The name "PAWest Cedar" appears above the paw prints in red. The top is secured by three large gold button fasteners.

We conduct our review mindful of the relationship between the law governing unfair competition and the patent law of this nation. Cedar–al's pet pillow is unpatented. Thus, competitors have the right to market pet pillows that are functionally identical to Cedar–al's product. *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 11 L. Ed. 2d 661, 84 S. Ct. 784 (1964). That is not to say, however, that the courts offer no remedy for those who fall prey to unfair competition. The first user of a distinctive trade dress is entitled to protection against a competitor using a substantially similar dress or name. The test is whether the second product so resembles the first, with respect to trade dress, that an ordinary consumer is likely to mistake one for the other. *Pacific Coast Condensed Milk Co. v. Frye & Co.*, 85 Wash. 133, 147 P. 865 (1915); W. Prosser, *Torts* § 130 (4th

ed. 1971).

Turning now to the facts, we must first determine where the "product" ends and the "trade dress" begins. This is essential because we must, of course, disregard similarities that are inherent in the product, *i.e.*, similarities resulting solely because the product itself was copied. It is only confusion with respect to *source* of the product against which the law guards. *SK&F, Co. v. Premo Pharmaceutical Labs., Inc.,* 625 F.2d 1055 (3d Cir. 1980). Put another way, a competitor may copy in total all of the functional characteristics of a rival's product, even when to do so renders the two products substantially similar in appearance. A competitor may not, however, appropriate those features of a rival's product that serve only to identify the product as coming from a particular source, *i.e.*, the rival. In this regard, although Cedar–al concedes that it has no exclusive right to manufacture a pet pillow filled with cedar shavings or to use burlap as a covering material, it does claim an exclusive right to use the natural burlap color. In essence, Cedar–al contends that natural colored burlap forms an integral part of the trade dress and that the "total visual image" of the PAWest product is impermissibly similar to its own product. We disagree.

Contrary to Cedar–al's claim respecting natural colored burlap, color, unless it is used in connection with other characteristics, cannot be used to distinguish a product. *Pacific Coast Condensed Milk Co. v. Frye & Co., supra.* In particular, the law recognizes no protectable interest in the color of *undyed* cloth. *Newcomer & Lewis v. Scriven Co.,* 168 F. 621 (6th Cir.), *cert. denied,* 214 U.S. 518, 53 L. Ed. 1065, 29 S. Ct. 700 (1909).

Turning to Cedar–al's complaint about the "total visual image," one of the most substantial indicia that confusion as to source will likely occur is similarity of names. Here, the names "Cedar–al" and "PAWest Cedar" do not sound alike; they are not printed in the same location or in a similar fashion on the front of the product. Further, the most prominent identifying characteristic of the Cedar–al pillow

is the large Haida Indian bear displayed on the front. The PAWest pillow, in contrast, portrays two large paw prints. The border designs are completely different. The only points of similarity are the use of gold buttons as fasteners at the top of the product and the use of similar, but not identical, earth tones in the color scheme.

It is essential to remember that Cedar–al is not claiming an exclusive right to market burlap–covered pet pillows, filled with cedar shavings. Rather, it stakes a claim to certain customers who allegedly desire a Cedar–al product rather than a competitor's. Before such a claim is entitled to protection, however, we believe the original producer must first successfully impress upon the mind of a potential customer its name or some other identifying characteristic. We do not mean to suggest that the customer must be educated to distinguish subtle details. If, however, the customer has little or no idea how to identify what he or she seeks, the competitor cannot be blamed if its product is purchased instead of the complainant's.

Here, we believe the salient identifying characteristics of these two products are sufficiently dissimilar to avoid any likelihood of source confusion. If a consumer buys a PAWest pillow intending to purchase a Cedar–al product, it is simply because the consumer is unable to identify a Cedar–al pillow, not because the products are too much alike. Further, we find the differences are sufficient that reasonable minds could not differ regarding the likelihood of source confusion. Accordingly, we reverse and direct entry of judgment in favor of the defendant.

PETRICH, C.J., and WORSWICK, J., concur.

Reconsideration denied October 29, 1984.

Review denied by Supreme Court January 4, 1985.