[No. 11761–4–II.   Division Two.   January 11, 1990.]

RAYMOND BOGGS, ET AL, *Respondents,* v. WHITAKER, LIPP &
HELEA, INC., P.S., ET AL, *Defendants,* AETNA
CASUALTY & SURETY COMPANY,
*Appellant.*

*David L. Martin, Lee, Smart, Cook, Martin & Patterson,*
and *John A. McHugh,* for appellant.

*Grant Kinnear* and *McInerney, Baker & Kinnear,* for
respondents Boggs.

*Jose E. Gaitan* and *Gaitan & Cusack,* for respondent McMenamin.

WORSWICK, J.—Aetna Casualty & Surety Company appeals a summary judgment the effect of which was to extend coverage under its business liability policy to claims of disgruntled investors in an ill–conceived investment scheme that had been promoted by Aetna's insured. We reverse.

Aetna's insured, G.A. Five, Inc., was in the business of selling insurance, annuities, and investments. It sold leases of master audio recordings to the plaintiffs, representing that the recordings were of as yet unreleased works by popular artists that could be used to produce marketable reel–to–reel tapes and cassettes. G.A. Five represented that the recordings were a source of profit with little risk, and that the investment entailed a substantial tax benefit. The representations were false. Title to the recordings was not clear, making the marketing of reproductions unlikely; the master tapes were of poor quality; the State of Washington ruled that sales were illegal because the "leases" were unregistered securities; and the IRS disallowed the promised tax benefits. The disappointed investors sued G.A. Five and many others, alleging violations of The Securities Act of Washington and Consumer Protection Act, false advertising, negligent and intentional misrepresentation, breach of contract, and common law negligence.

The business policy G.A. Five had purchased from Aetna provided coverage for bodily injury or property damage related to the operation of the business, and for damages based on advertising offenses, the definition of which included unfair competition. The policy did not afford "errors and omissions" (professional negligence) coverage. All parties moved for summary judgment. The issue was whether these coverages extended to the plaintiffs' claims.[1]

---

[1]Through a series of procedural maneuvers, irrelevant to our discussion, the claims were reduced to judgment and garnishment proceedings were initiated against Aetna.

The trial court granted plaintiffs' motions. Its order did not specify the basis for the ruling.[2]

█ We begin our analysis by reiterating several familiar axioms: An insurance policy is a contract, and the rules regarding its construction are basically the same as those covering other contracts. *Stanton v. Public Employees Mut. Ins. Co.*, 39 Wn. App. 904, 907, 697 P.2d 259, *review denied*, 103 Wn.2d 1039 (1985). A court must look first to the contract to determine the parties' intent. *Greer v. Northwestern Nat'l Ins. Co.*, 109 Wn.2d 191, 197, 743 P.2d 1244 (1987). Clear language must be given effect according to its plain meaning, and a court may not construe such language. *Felice v. St. Paul Fire & Marine Ins. Co.*, 42 Wn. App. 352, 356, 711 P.2d 1066 (1985), *review denied*, 105 Wn.2d 1014 (1986). In interpreting a policy, the language must be given a fair, reasonable, and sensible construction. *E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986). It should be interpreted as it would be understood by the average purchaser of such a policy. *See Ames v. Baker*, 68 Wn.2d 713, 716, 415 P.2d 74 (1966). A court will presume that the parties contracted with reference to existing statutes. *Wagner v. Wagner*, 95 Wn.2d 94, 98, 621 P.2d 1279 (1980). A contract will be interpreted in light of the statutes that affect its subject matter. *See Dopps v. Alderman*, 12 Wn.2d 268, 273, 121 P.2d 388 (1942).

It is clear that the plaintiffs' claims did not involve personal injury or injury to tangible property as required by those coverages of the policy.[3] This point was all but conceded by the plaintiffs, and we need not discuss it further.

The policy also provided coverage for

. . . All sums which the insured shall become legally obligated to pay as damages because of . . . *advertising offense* sustained

---

[2]The judge indicated in his oral opinion only that he considered it unfair to deny coverage because of Aetna's interpretation of the term of art "unfair competition."

[3]Loss resulting from a securities investment is not loss of "tangible property" as that term is used in insurance policies. *Washington Pub. Util. Dists.' Utils. Sys. v. PUD 1*, 112 Wn.2d 1, 14, 771 P.2d 701 (1989).

by any person or organization and arising out of the conduct of the named insured's business. . . .

(Italics ours.) It defined "advertising offense" as

. . . injury occurring in the course of the named insured's *advertising activities,* if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, *unfair competition,* or infringement of copyright, title, or slogan.

(Italics ours.)

■ Aetna contends that "unfair competition" clearly means only the common law tort of "passing off," which involves the appropriation of a competitor's name or symbols or the substitution of goods so as to deceive the public.[4] The plaintiffs contend that the term is not clear, is not defined in the policy, and therefore should be interpreted in light of the conduct prohibited by the Consumer Protection Act, RCW 19.86. For the purposes of this appeal, we will assume that since the Consumer Protection Act deals with a subject that is also contemplated by this insurance contract, its provisions are applicable to the interpretation of this policy. That does not get the plaintiffs very far, however.

RCW 19.86.020 states:

**Unfair competition, practices, declared unlawful.** Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

The unfair competition condemned by the statute does not include the conduct alleged in this case. The term applies only to acts against competitors. *See State v. Black,* 100 Wn.2d 793, 803, 676 P.2d 963 (1984); *Seaboard Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.,* 81 Wn.2d 740, 742–43, 504 P.2d 1139 (1973). Suits based on conduct that is harmful to consumers but not competitors

---

[4]Aetna relies on *Ruder & Finn Inc. v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 422 N.E.2d 518, 439 N.Y.S.2d 858 (1981), *Globe Indem. Co. v. First Am. State Bank,* 720 F. Supp. 853 (W.D. Wash. 1989), and *Pine Top Ins. Co. v. PUD 1,* 676 F. Supp. 212 (E.D. Wash. 1987), all of which did so limit the definition in determining the scope of coverage in insurance policies. *See also Cedar-al Prods., Inc. v. Chamberlain,* 38 Wn. App. 626, 687 P.2d 880 (1984), *review denied,* 103 Wn.2d 1011 (1985).

arise under the prohibition of unfair and deceptive practices, not unfair competition. *See FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233, 31 L. Ed. 2d 170, 176, 179, 92 S. Ct. 898 (1972); *Seaboard,* 81 Wn.2d at 745–46. Both RCW 19.86.020 and section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), prohibit both unfair methods of competition *and* unfair or deceptive practices.[5] The second phrase was added to the Federal Trade Commission Act in 1938. The Court in *FTC v. Sperry & Hutchinson Co.,* 405 U.S. at 244, explained:

> The amendment added the phrase "unfair or deceptive acts or practices" to the section's original ban on "unfair methods of competition" and thus made it clear that Congress, through § 5, charged the FTC with protecting consumers as well as competitors. The House Report on the amendment summarized congressional thinking: "[T]his amendment makes the consumer, who may be injured by an unfair trade practice, of equal concern, before the law, with the merchant or manufacturer injured by the unfair methods of a dishonest competitor." H.R. Rep. No. 1613, 75th Cong., 1st Sess., 3 (1937). See also S. Rep. No. 1705, 74th Cong., 2d Sess., 2–3 (1936).[6]

A similar distinction was made in *Money Savers Pharmacy, Inc. v. Koffler Stores (Western) Ltd.,* 37 Wn. App. 602, 612, 682 P.2d 960 (1984), in which the court refused to characterize the defendant's conduct as an unfair method of competition rather than an unfair or deceptive act or practice, noting that the plaintiff had presented no evidence that any other competitor had been or would be harmed by defendant's advertising.[7] Unfair and deceptive

---

[5]15 U.S.C. § 45(a)(2) states in part:

"The Commission is empowered and directed to prevent persons, partnerships, or corporations . . . from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce."

[6]The Consumer Protection Act is patterned to a large extent after federal trade regulation statutes, and we may look to federal law for guidance in interpreting the state statute. *State v. Black,* 100 Wn.2d at 799.

[7]Even the dictionary definitions advocated by the plaintiffs define "unfair competition" in terms of conduct involving business *competition* or *rivalry, viz.:*

*Webster's Third New International Dictionary* 2494 (1971):

**1 a :** *business competition* effected by an act that is deceptive and in effect a fraud on the public or that otherwise violates the legal or equitable rights of a

practices *may* also constitute unfair competition, but there can be no coverage under such language in an insurance policy unless there are allegations and evidence of harm or potential harm to a competitor. *See Seaboard,* 81 Wn.2d at 744, 745–46.

Here, the complaints alleged only unfair and deceptive practices. There is nothing in the record to suggest that G.A. Five's deceptive advertising was intended to give the company an advantage over competitors, or that it actually harmed any competitors. In fact, there is no evidence that there *were* competitors in this phase of G.A. Five's business. The complaints acknowledge that G.A. Five and GA III, both owned by the same individuals, constituted the entire sales force for the master recordings in Washington state. There was no reasonable basis upon which the average purchaser of a business policy containing the provisions here in question could have assumed that advertising practices that did not involve business rivalry constituted unfair competition.

We have considered all other contentions of the parties and find them without merit or that discussion is unnecessary.

Reversed.

ALEXANDER, C.J., and PETRICH, J., concur.

Review denied at 114 Wn.2d 1018 (1990).

---

competitor or the public **b** : an improper or inequitable *obtaining by one competitor of the benefits belonging to another* <passing off on the public the goods of one person as those of another is a form of unfair competition> **2** : a *competitive practice* contrary to the ethical standards of business or in violation of existing law as interpreted by a federal trade commission or a state agency

*Random House Dictionary of the English Language* 2067 (2d ed. 1987):

1. acts done by a seller to confuse or deceive the public *with intent to acquire a larger portion of the market,* as by cutting prices below cost, misleading advertising, selling a spurious product under a false identity, etc. 2. the use of any such methods.

(Italics ours.)