**ATLANTIC MUTUAL INSURANCE CO.**

v.

**BROTECH CORPORATION, Defendant and Third Party Plaintiff,**

v.

**PLANET INSURANCE COMPANY and Lexington Insurance Company, Third Party Defendants.**

Civ. A. No. 93–1450.

United States District Court, E.D. Pennsylvania.

June 30, 1994.

Joseph P. Connor, III, Connor & Weber, P.C., Paoli, PA, for Atlantic Mut. Ins. Co.

Paul R. Rosen, Spector, Gadon & Rosen, P.C., Philadelphia, PA, Karen L. Bush, Andrew M. Reidy, Anderson, Kill, Olick & Oshinsky, Washington, DC, for Brotech Corp.

T. Kevin Fitzpatrick, Liebert, Short & Hirshland, Eric A. Weiss, Marshall Dennehey Warner Coleman & Goggin, Philadelphia, PA, for Planet Ins. Co.

Edwin L. Scherlis, Michael J. Cawley, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, PA, for Lexington Ins. Co.

### MEMORANDUM

WALDMAN, District Judge.

### I. *Introduction*

This is an action by Atlantic Mutual Insurance Company ("Atlantic") against Brotech Corporation ("Brotech") for a declaratory judgment and ruling that Atlantic, under two comprehensive general liability policies it issued to Brotech, owes no duty to defend Brotech in a patent infringement action or to indemnify Brotech for any liability it may incur in that action.

Brotech filed a counterclaim seeking a declaration that Atlantic owes a duty to defend and indemnify Brotech as an insured. Brotech also filed a third-party complaint against Lexington Insurance Company ("Lexington") and Planet Insurance Company ("Planet") for similar relief based on their issuance of policies to Brotech after the effective coverage periods of the Atlantic policies.

Presently before the court is the Motion of Defendant and Third–Party Plaintiff Brotech Corporation for Partial Judgment on the Pleadings or, in the Alternative, Partial Summary Judgment on the Duty to Defend and the Cross–Motions for Summary Judgment of Plaintiff Atlantic Mutual Insurance and Third–Party Defendants Planet Insurance Company and Lexington Insurance Company.

### II. *Legal Standard*

All parties involved have requested a judgment on the pleadings under Fed.R.Civ.P. 12(c), or alternatively, partial summary judgment. Since all parties have presented material outside the pleadings which the court has considered, the court will treat the motions as motions for summary judgment pursuant to Fed.R.Civ.P. 56.

In considering a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Arnold Pontiac–GMC, Inc. v. General Motors Corporation*, 786 F.2d 564, 568 (3d Cir.1986). Only facts that may affect the outcome of a case under applicable law are "material." *Anderson, supra* 477 U.S. at 248, 106 S.Ct. at 2510.

All reasonable inferences from the record must be drawn in favor of the non-movant. *Anderson, supra* 477 U.S. at 256, 106 S.Ct. at 2514. Although the movant has the initial burden of demonstrating an absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

### III. *Facts*

There is no dispute among the parties as to the following material facts pertinent to a resolution of this case.

On March 1, 1990, Rohm & Haas filed an action against Brotech for patent infringement. Rohm & Haas alleged that from 1981 Brotech has infringed certain patents by selling or using the products defined by the claims of those patents or by selling or using the products made by the processes defined by the claims of those patents. The *Rohm & Haas* litigation is proceeding in the District of Delaware. Brotech has incurred substantial costs.

On June 15, 1992, pursuant to two comprehensive general liability insurance policies that covered the period from November 6, 1981 to December 15, 1986, Brotech requested that Atlantic defend and indemnify Brotech in the *Rohm & Haas* litigation. On July 6, 1992 and July 23, 1992, Brotech made similar requests of Lexington and Planet respectively, pursuant to policies that covered the period from December 15, 1986 through October 1, 1990. All of the insurance companies denied coverage.

Atlantic's duty to defend and indemnify is contained in § II(A) of the Broad Form Comprehensive General Liability Endorsement entitled Personal Injury and Advertising Injury Liability Coverage. It provides that Atlantic:

> ... will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent ...

This boiler plate insurance contract provision is also contained in nearly identical form in the policies of Lexington and Planet.

The insurance companies denied Brotech's assertion that the patent infringement action was encompassed by the term "advertising injury".[1] The relevant policy provision in the Atlantic policy stated:

> "Advertising injury" means injury arising out of an offense committed during the policy period occurring in the course of the named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right to privacy, piracy, unfair competition, or infringement of copyright, title or slogan.

---

1. The policy of Lexington contains the same language when defining advertising injury and in outlining the duty to defend. While not identical, the policy of Planet contains similar language when defining "advertising injury". Any difference is stylistic and does not affect the substance of the definition of "advertising injury".

Planet's policy states:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of the injury sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:

Group D—libel, slander, defamation, invasion of the right to privacy, piracy, unfair competition or idea misappropriation under an implied contract, or infringement of copyright, title or slogan, arising out of the named insured's advertising activities;

herein called "advertising injury";

if such offense is committed during the policy period, within the policy territory and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury even if any of the allegations of the suit are groundless, false or fraudulent ...

The insurance companies rejected Brotech's contention that patent infringement was encompassed by the terms "piracy," "unfair competition" and "infringement of title" in the definition of "advertising injury".[2]

## IV. *Discussion*

█ The issue presented is whether a claim of patent infringement triggers a duty to defend the insured in a policy that includes coverage for "advertising injury". There are no Pennsylvania appellate cases directly on point.[3] The court must predict how the Pennsylvania Supreme Court would decide the issue.[4]

█ The principles which govern interpretation of a contract of insurance under Pennsylvania law are well settled. The task of interpreting a contract must generally be performed by the court. *See Gonzalez v. United States Steel Corp.,* 484 Pa. 277, 298, 398 A.2d 1378 (1979); *Community College of Beaver County v. Society of the Faculty,* 473 Pa. 576, 592, 375 A.2d 1267 (1977). The goal is to ascertain the intent of the parties as manifested by the language of the written instrument. *See Mohn v. American Casualty Co. of Reading,* 458 Pa. 576, 586, 326 A.2d 346 (1974). The court must read the insurance policy as a whole and construe it according to the plain meaning of its terms. *C.H. Heist Caribe Corp. v. American Home Assurance Company,* 640 F.2d 479, 481 (3rd Cir.1981).

█ A term is ambiguous if reasonable people, considering it in the context of the entire policy, could fairly ascribe different meanings to it. *Northbrook Insurance Co. v. Kuljian Corp.,* 690 F.2d 368, 372 (3rd Cir. 1982); *United Servs. Auto. Ass'n v. Elitzky,* 358 Pa.Super. 362, 369, 517 A.2d 982 (1986). Where a provision is ambiguous, it should be construed against the insurer as the drafter of the agreement. *C.H. Heist,* 640 F.2d at 481; *Lazovick v. Sun Life Insurance Company of America,* 586 F.Supp. 918, 922 (E.D.Pa. 1984). A court, however, should not torture the language of the policy to create ambiguities. *Eastern Associated Coal Corp. v. Aetna Casualty & Surety Co.,* 632 F.2d 1068, 1075 (3rd Cir.1980).

█ Where the language of the contract is clear, a court is required to give the words their ordinary meaning. *Northbrook,* 690 F.2d at 372; *Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.,* 426 Pa. 453, 457, 233 A.2d 548 (1967).

█ An insurer has a duty to defend whenever the allegations of an underlying complaint against a policyholder potentially fall within the coverage of the policy. *C.H. Heist,* 640 F.2d at 483; *Safeguard Scientifics v. Liberty Mut. Ins. Co.,* 766 F.Supp. 324, 328–29 (E.D.Pa.1991); *Cadwallader v. New Amsterdam Cas. Co.,* 396 Pa. 582, 589, 152 A.2d 484 (1959). The duty to defend is independent of, and broader than, the duty to indemnify. *J.H. France Refractories v. Allstate,* 534 Pa. 29, 626 A.2d 502, 510 (1993).

2. The companies also gave as a reason for denial of coverage that Brotech breached its contractual obligation promptly to notify the insurer of the underlying litigation. Brotech's notice was clearly untimely. To disclaim coverage for late notification, however, an insurer must prove not only that the notice provision was breached but that the breach resulted in actual prejudice to its position. *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 76, 371 A.2d 193 (1977). A general statement that an insured has been prejudiced is insufficient. *See Trustees of the Univ. of Pennsylvania v. Lexington Ins. Co.,* 815 F.2d 890, 898–99 (3rd Cir.1987). The insurer must prove late notification had "disadvantageous, substantive results." *Id.* at 898. There are material factual disputes which preclude summary judgment on this ground.

3. There is a recent opinion of the Montgomery County Court of Common Pleas which held that a claim of patent infringement does not trigger a duty to defend the insured under coverage for "advertising injury". *Den–Tal–Ez, Inc. v. Reliance Insurance Co., et al.,* 92–05352 (Nov. 10, 1993).

4. Under Pennsylvania conflicts law, the interpretation of insurance contracts is governed by the law of the state where the policy is "issued and delivered." *Pittsburgh–Bridge & Iron Works v. Liberty Mutual Insurance Company,* 444 F.2d 1286, 1288 n. 2 (3rd Cir.1971). In this case, the policies were delivered to and accepted by the insured in Pennsylvania. Also, all parties rely on Pennsylvania law throughout their briefs. *See Mellon Bank, N.A. v. Aetna Business Credit,* 619 F.2d 1001, 1005 n. 1 (3rd Cir.1980).

428

## A. Duty to Defend

■ Under the terms of the policy provisions in question, to implicate coverage and trigger a duty to defend it must appear that the claim of patent infringement may fall within the specified conduct constituting "advertising injury" and that the injury alleged in the underlying complaint may have occurred in the course of the insured's advertising activity. Brotech contends that "piracy," "unfair competition" and "infringement of title" all encompass patent infringement and that the injury alleged in the *Rohm & Haas* complaint occurred in the course of advertising activity by Brotech.

The term "piracy," *per se*, is undefined in the policies. Brotech relies on a definition of piracy in a lay dictionary as "the unauthorized use of another's production, invention or conception esp. in the infringement of a copyright." *Webster's Ninth New Collegiate Dictionary* (1991). This broad definition could encompass patent infringement and absent a more limiting definition in the policy itself, is thus a meaning that might reasonably be ascribed to the term "piracy." *See New Hampshire Insurance Company v. R.L. Chaides Construction Co. Inc.*, 1994 WL 10015, *3 (N.D.Cal. Jan. 7, 1994); *National Union Fire Ins. Co. v. Siliconix Inc.*, 729 F.Supp. 77, 79 (N.D.Cal.1989).

Brotech, however, views the term "piracy" in isolation and completely out of the context of the surrounding policy language. The issue is not what the isolated term "piracy" could mean, but what "piracy" occurring in the course of advertising activity reasonably could mean. Placed in context, the intended meaning of the language is clear. "In the context of policies written to protect against claims of advertising injury, 'piracy' means misappropriation or plagiarism found in the elements of the advertisement itself—in its text form, logo, or pictures—rather than in

the product being advertised." *See Iolab Corporation v. Seaboard Surety Company,* 15 F.3d 1500, 1506 (9th Cir.1994). The court believes that the Supreme Court of Pennsylvania would as a matter of law and reason also find that patent infringement is not reasonably encompassed in the term "piracy" as used in these policies.

■ A similar contextual analysis compels the conclusion that patent infringement is not an intended or reasonably perceived meaning of the term "unfair competition." "Unfair competition" is listed in the policy provision among other specified common law torts including slander, libel, defamation and violation of the right to privacy. Pennsylvania law has also long recognized unfair competition as an action separate and independent from patent infringement. *See Pottstown Daily News Publishing Company v. Pottstown Broadcasting Company,* 411 Pa. 383, 389, 192 A.2d 657 (1963).

The term "unfair competition" in this context clearly refers only to the common law tort.[5] *See e.g., Standard Fire Insurance Co. v. Peoples Church of Fresno,* 985 F.2d 446, 449 (9th Cir.1993) ("unfair competition" as it relates to advertising injury in insurance policies is limited to the common law tort); *Bank of the West,* 2 Cal.4th at 1263, 10 Cal.Rptr.2d 538, 833 P.2d 545 ("unfair competition" in insurance policies is limited to the common law tort); *A. Meyers & Sons Corp. v. Zurich American Insurance Group,* 74 N.Y.2d 298, 546 N.Y.S.2d 818, 545 N.E.2d 1206 (1989) (same); *Ruder & Finn Inc. v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 439 N.Y.S.2d 858, 862, 422 N.E.2d 518, 522 (1981) (same); *Seaboard Sur. Co. v. Ralph Williams' N.W. Chrys. P., Inc.,* 81 Wash.2d 740, 504 P.2d 1139, 1140–43 (1973) (same); *Boggs v. Whitaker, Lipp & Helea, Inc.,* 56 Wash.App. 583, 784 P.2d 1273 (1990) (same),

---

5. To support its position that "unfair competition" in an insurance contract could include patent infringement, Brotech relies solely on *Intex Plastics Sales Co. v. United Nat. Ins. Co.,* 1990 WL 279505, at *3, 1990 U.S.Dist.LEXIS 18200, at *7 (C.D.Cal. Dec. 6, 1990) and *Aetna Casualty & Sur. Co. v. Watercloud Bed Co.,* 1988 WL 252578, at *7, 1988 U.S. Dist.LEXIS 17572, at *19 (C.D.Cal. Nov. 17, 1988). The reasoning and conclusions in those cases have been rejected by

the Ninth Circuit and Supreme Court of California. *See Intex Plastics Sales Co. v. United Nat. Ins. Co.,* 23 F.3d 254 (9th Cir.1994); *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal. Rptr.2d 538, 833 P.2d 545 (1992). Brotech cites and the court finds no other case which has held that the term "unfair competition" in an insurance contract includes within its meaning the violation of a state or federal statutory right.

*rev. denied,* 114 Wash.2d 1018, 791 P.2d 535 (1990); *Graham Resources, Inc. v. Lexington Insurance Co.,* 625 So.2d 716, 721 (La.Ct. App.1993) (courts have universally ruled that unfair competition in context of insurance coverage for advertising injury does not refer to conduct prohibited by statute); *Smartfoods, Inc. v. Northbrook Property and Casualty Co.,* 35 Mass.App.Ct. 239, 618 N.E.2d 1365 (1993) (same).

The courts in all of these jurisdictions employed virtually universal principles of insurance contract interpretation and reason in finding that patent infringement is not reasonably encompassed in the term "unfair competition" as used in policies such as those at issue. The court believes that the Supreme Court of Pennsylvania would reach the same conclusion.

■ A plain reading of the term "infringement of copyright, title or slogan" in the course of advertising activities also would exclude a claim of patent infringement. Isolating the term "title," Brotech argues that "infringement of title" encompasses patent infringement because a patent is property to which title may be acquired. The very case on which Brotech relies is a trademark case in which the court made clear that in the context of a similar standard "advertising injury" provision the term "title" refers to a distinctive name or designation used to identify a literary or artistic work and not to the legal concept of ownership of property. *See J.A. Brundage Plumbing v. Massachusetts Bay Ins.,* 818 F.Supp. 553, 559 (W.D.N.Y. 1993). Under defendant's proffered reading, the insurance companies could be liable under this provision for an insured's theft, misappropriation or conversion of any personal property of another if such were then advertised for sale. The term "infringement of title" as used in the pertinent policies cannot reasonably be perceived to mean patent infringement.

Even if the term "title" were equated with any property right, the infringement of a patent holder's property right in the course of the infringer's advertising activities would necessarily entail use of the property to advertise and not merely the advertisement of the property.[6]

■ Even if patent infringement were included in the specified acts defining "advertising injury," the claim in the underlying complaint would not trigger a duty to defend. Even where a claim is for conduct specified in the definition of advertising injury, courts have consistently held that there must be a causal connection between the injury alleged in the underlying complaint and the insured's advertising activity. Since the gravamen of patent infringement is the unauthorized production, use or sale of a patented product and not its advertisement, it could not arise out of or occur in the course of advertising activities. *Intex Plastics,* 23 F.3d at 256 (patent infringement does not occur in the course of an insured's advertising activity); *Sentry Ins. v. R.J. Weber Co. Inc.,* 2 F.3d 554, 557 (5th Cir.1993) (infringement claim for sales of copyrighted material has no connection to insured's advertising activity precluding policy coverage); *Iolab,* 15 F.3d at 1505–07 (no causal nexus between patent infringement claim and insured's advertising activity precluding coverage); *Siliconix,* 729 F.Supp. at 79–80; *Lazzara Oil Co. v. Columbia Cas. Co.,* 683 F.Supp. 777, 780 (M.D.Fla. 1988); *Bank of the West,* 2 Cal.4th at 1275, 10 Cal.Rptr.2d 538, 833 P.2d 545.

■ The claim is that "Brotech has been infringing the claims of Rohm and Haas" by "using and/or selling products defined by the claims of Rohm and Haas patents and/or using and/or selling products made by the processes defined by the claims of Rohm and Haas patents." There is no causal nexus between this alleged injury and the advertising activities of the insured. The mere advertising of a patented product would not support a claim of patent infringement and the advertising of a patented product is not an element of a patent infringement claim.

---

6. Indeed, in the only case cited by Brotech that remotely supports its position, the court found that coverage for an advertising injury arising from "infringement of title" could be implicated by a claim against the insured for *use* of a competitor's misappropriated customer list *to advertise* the insured's competing line of products. *See Merchants Co. v. American Motorists Ins.,* 794 F.Supp. 611, 618 (S.C.Miss.1992).

Brotech acknowledges that advertising must cause the injury alleged and that the injury claimed by Rohm & Haas resulted from sales of alleged infringing products. Brotech proceeds to argue that one cannot sell without advertising and therefore the claimed injury at least potentially was caused by advertising. Parties, of course, can and do sell items without advertising. Moreover, Brotech takes a giant leap in asserting this argument. With defamation, for example, the injury is caused by an advertisement that contains defamatory statements about a person or product. Here, Brotech effectively contends that advertising may have caused the thing (a sale) that caused the injury. This is not "but for" causation, the standard proffered by Brotech, or otherwise sufficient to trigger the possibility of coverage.

The court believes that the Pennsylvania Supreme Court would agree with the view consistently expressed by an array of courts that have addressed the issue that there must be a causal relationship between the alleged injury and the insured's advertising activity to implicate coverage and that such is clearly absent in this case.[7]

---

**7.** As the duty to defend is broader than the duty to indemnify, it follows that there is no duty to indemnify where there is no duty to defend. Brotech also asserts claims against the insurers for breach of contract and violation of 42 Pa. C.S.A. § 8371 which appear to be premised on their declination of coverage and thus also precluded. *See Lucker Manufacturing v. Home Ins. Co.,* 23 F.3d 808, 820 (3d Cir.1994). Nevertheless, because none of the parties address those claims in their motions or briefs, the court at this time will not dispose of them.