

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-1995

# Granite State v AAMCO

Precedential or Non-Precedential:

Docket 94-2036

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Granite State v AAMCO" (1995). *1995 Decisions.* Paper 161.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/161

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-2036


GRANITE STATE INSURANCE COMPANY

v.

AAMCO TRANSMISSIONS, INC.,
MORGAN INDUSTRIES, INC.

Aamco Transmissions, Inc.,

Appellant


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 93-05094)


Submitted under Third Circuit LAR 34.1(a)
May 22, 1995

BEFORE: GREENBERG, ROTH, and ALDISERT, Circuit Judges

(Filed: June 9, 1995)

Allan C. Molotsky
John W. Potkai
Post & Schell
1800 JFK Boulevard
19th Floor
Philadelphia, Pa. 19103

Attorneys for Appellee

Karen A. VonDreusche
Aamco Transmissions
One Presidential Boulevard
Bala Cynwyd, Pa. 19004

Attorneys for Appellant

OPINION OF THE COURT

GREENBERG, Circuit Judge.

Aamco Transmissions, Inc., appeals from an order entered on September 20, 1994, granting the appellee Granite State Insurance Company judgment on the pleadings on both Granite's complaint and Aamco's counterclaim in this diversity of citizenship insurance coverage declaratory judgment action. The parties have briefed this case under Pennsylvania law and thus we will decide this case the way we believe the Supreme Court of Pennsylvania would decide it. As might be expected from the procedural posture of the case, the facts are not in dispute.

I.

FACTUAL AND PROCEDURAL HISTORY

This case arose out of a class action commenced in October 1990 in the Court of Common Pleas of Philadelphia County by Joseph R. Tracy and Joseph P. Tracy against Aamco. The Tracys asserted that Aamco operated a nationwide network of automobile transmission repair shops at about 800 franchised outlets. They claimed to have purchased "Lifetime Rebuilt Transmission Services" from Aamco franchisees. According to the Tracys, Aamco used deceptive advertising which did not describe its services accurately and which lured purchasers of transmission services into paying more than they should have paid and induced them to pay for unnecessary repairs.

The Tracys brought the action, with exclusions not material here, on behalf of themselves and all Pennsylvania residents who had purchased reconditioned, rebuilt or reassembled automatic transmission services from Pennsylvania Aamco franchisees during the six years before they started their action.[1] The Tracys asserted that Aamco was liable under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, § 201-3 (1993), which provides a remedy for various unfair methods of competition and trade practices.

At the time the Tracys brought their action and during the six previous years, Granite insured Aamco under a comprehensive general liability insurance policy for "personal injury or advertising injury . . . arising out of the conduct of" Aamco's business. The policy defined "advertising injury" as an "injury arising . . . in the course of [Aamco's] advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan." Relying on the policy, Aamco demanded that Granite defend and indemnify it in the Tracy case, claiming that it had coverage under the "unfair competition" category of the "advertising injury" coverage. Granite, however, declined to cover Aamco, and

---

[1]. Morgan Industries, Inc., which is or was the parent of Aamco, was also a defendant in the Tracy action and is a defendant in this case but as it is not an appellant we make no further reference to it. We have not described the Tracys' allegations in detail because for our purposes that case is relevant only for the fact that it was brought by purchasers of Aamco's services rather than by a competitor of Aamco.

Aamco then settled the Tracy action itself.  Granite subsequently brought this action seeking a declaratory judgment that it was not obligated to provide coverage to Aamco for the claims in the Tracy action.  Aamco counterclaimed for its expenses in defending and settling the Tracy case.

Subsequently Granite made a motion for judgment on the pleadings which the district court granted in a memorandum opinion.  At the outset the court set forth familiar general principles of insurance law.  It explained that under Pennsylvania law when the facts are not in dispute the court interprets an insurance policy as a matter of law.  See Pacific Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985).  It then indicated that it would review the terms of the Granite policy to determine the parties' intent and in doing so would read the policy as a whole and construe it according to its plain meaning.  See Atlantic Mut. Ins. Co. v. Brotech Corp., 857 F. Supp. 423, 427 (E.D. Pa. 1994), aff'd, No. 94-1897, ____ F.3d ____ (3d Cir. May 12, 1995) (table).  The court said that if the policy language is clear it must be given effect according to its plain meaning but if the language is ambiguous all doubts as to its meaning should be resolved in favor of the insured.  See St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1430 (3d Cir. 1991).

The court then addressed the particular issue at hand.  It noted that inasmuch as the policy did not define "unfair competition," it would construe that term "in the context of insurance coverage according to case law," resolving all

ambiguities in Aamco's favor. Although Aamco argued that the policy covered claims for all violations of Pennsylvania's business fraud statute, the court followed Atlantic Mutual and held that the term "unfair competition" in the Granite policy "does not include claims based on state or federal statute." See Atlantic Mutual, 857 F. Supp. at 428. Thus, as the Tracys predicated their claims solely on the Pennsylvania Unfair Trade Practices and Consumer Protection Law, the court held that Granite's policy did not cover the claims. The court further held that the term "unfair competition" was not ambiguous and that Aamco could not have had a reasonable expectation that the Tracys' claims were covered. In view of those conclusions the court did not address Granite's alternative contention that the policy confines coverage for an advertising injury to claims by the insured's business competitors and does not cover claims by its customers. Aamco then appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

### DISCUSSION

We will affirm, though we do not ground our result on the district court's reasoning as we do not agree with its conclusion that the phrase "unfair competition" unambiguously refers only to the traditional common law tort of that name.[2]

_____

[2]. We exercise plenary review. See Electric Ins. Co. v. Rubin, 32 F.3d 814, 815 (3d Cir. 1994).

For one thing, the courts are not uniform in describing the tort of unfair competition.  "The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection."  Bank of the West v. Superior Court, 833 P.2d 545, 551 (Cal. 1992).  See also AT & T v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1428 & n.9 (3d Cir. 1994) (describing cause of action for unfair competition under Lanham Act), cert. denied, 115 S.Ct. 1838 (1995).  Thus, in Bank of the West the court indicated that "[t]he common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another."  Nevertheless the Supreme Court of Pennsylvania has held that other types of conduct can constitute unfair competition actionable at common law.  See Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy, 203 A.2d 469, 473 (Pa. 1964) (finding it illegal to make false or misleading statements about the circumstances under which an employee left an employer).  Therefore, it is not so easy to conclude that there is one narrow and clear category of the common law tort.

Furthermore, regardless of the scope of the common law tort of unfair competition, a person reading the term "unfair competition" as a category of "advertising injury" within an insurance policy would not necessarily understand the term to be limited to a common law definition.  A broader interpretation of the term than in Bank of the West would be particularly reasonable in Pennsylvania as that state's legislature has

defined "[u]nfair methods of competition" to include a host of activities in addition to passing off goods or services as those of another. Pa. Stat. Ann. tit. 73, § 201-2(4) (1993). In short, we see no valid reason to exclude conduct described in the statute simply because it might not be regarded as unfair competition in a common law sense.

Yet even if the term "unfair competition" within an insurance policy is construed broadly with respect to the character of an insured's conduct, that construction does not determine the class of persons who can present claims against the insured which will be regarded as being claims for unfair competition within the policy. Thus, in order for Aamco to succeed, it must show that claims by its customers injured by its own practices reasonably can be described as unfair competition claims within the context of the insurance coverage. In this endeavor it fails for, regardless of the nature of the insured's conduct, a claim by a consumer of its products or services arising from that conduct hardly can be characterized as a claim for unfair competition. After all, "competition" connotes an insured's relationship with other persons or entities supplying similar goods or services.

In fact, the Pennsylvania legislature itself recognized this point. The statute involved in the Tracy action is not called the "Pennsylvania Unfair Competition Statute." Rather, it is the "Pennsylvania Unfair Trade Practices and Consumer Protection Law." (Emphasis added). It is a broad business fraud statute that by its very title demonstrates that it encompasses

more than acts of unfair competition. Indeed, the statute distinguishes explicitly between "unfair methods of competition" and "unfair or deceptive acts or practices," though it lists them together in one subsection. Pa. Stat. Ann. tit. 73, § 201-2(4) (1993). The fact that the legislature deemed it expedient to combine the remedies for unfair competition and consumer fraud in one statute does not magically transform acts of "consumer fraud" into acts of "unfair competition." Accordingly, we think that the Supreme Court of Pennsylvania would hold that a competitor of the insured, but not its customer, can assert a claim which may be covered under the "unfair competition" category of the "advertising injury" coverage.[3] While we acknowledge, as did the district court, that ambiguities in insurance policies should be resolved in an insured's favor, the Granite policy is not ambiguous with respect to the relationship required between a plaintiff in an underlying action and an insured for that plaintiff's claim to be considered unfair competition within the Granite policy.

The result we reach is consistent with the overall definition of "advertising injury" in the policy. As we have

_____

[3]. Under the statute, "[a] private cause of action . . . is available only to consumers who have purchased goods or services for personal, family, or household purposes." Merv Swing Agency, Inc. v. Graham Co., 579 F. Supp. 429, 430 (E.D. Pa. 1983) (citing statute). However, the statute protects business competitors from unfair competition, as it authorizes the Attorney General and district attorneys to bring actions in the name of the Commonwealth of Pennsylvania against people they have reason to belive are "using or about to use any method, act, or practice declared by . . . this act to be unlawful." Pa. Stat. Ann. tit. 73, § 201-4 (1993).

indicated, the Granite policy defines "advertising injury" to include injuries arising from "libel, slander, defamation, violation of right of privacy, piracy . . . or infringement of copyright, title or slogan" as well as unfair competition. While we do not say that the Supreme Court of Pennsylvania would conclude that none of these categories could provide coverage for a claim by a customer against an insured vendor, as we have no reason to reach that point, none of the categories suggests claims which a customer is likely to assert against a vendor. Rather, the categories all define claims which an insured's competitor might assert against it. For example, a competitor might base a libel action on an insured's negative advertising. Thus, the definition of "advertising injury" lends support to our conclusion that the word "competition" as used in "unfair competition" limits coverage to claims by competitors of the insured.

We also point out that if "unfair competition" includes coverage for a claim by a customer against an insured, the insured "would simply shift the loss to [its] insurer and, in effect, retain the proceeds of [its] unlawful conduct." Bank of the West, 833 F.2d at 553. In this case a finding of coverage would mean that Granite would be obliged to reimburse Aamco for the costs to defend and settle the Tracy case but that Aamco could retain whatever funds it received by reason of the Tracy

plaintiffs having obtained transmission services from Aamco franchisees.[4]  Our outcome avoids this untoward result.

While the parties have not brought to our attention any opinion of the Pennsylvania Supreme Court or Superior Court addressing the issue before us, opinions from other courts are consistent with our result.  Thus, in Ruder & Finn, Inc. v. Seaboard Sur. Co., 422 N.E.2d 518, 522 (N.Y. 1981) (internal quotation marks omitted), the court accepted the insurer's argument that "the primary concern in unfair competition is the protection of a business from another's misappropriation of the business' organization or its expenditure of labor, skill and money."  In Boggs v. Whitaker, Lipp & Helea, Inc., 784 P.2d 1273, 1275 (Wash. Ct. App.), review denied, 791 P.2d 535 (Wash. 1990), the court held that the term "unfair competition" in a policy including coverage for advertising offenses did not apply to a claim under the Washington Consumer Protection Act as "unfair competition" referred "only to acts against competitors."  In Practice Management Assocs. v. Old Dominion Ins. Co., 601 So.2d 587 (Fla. Dist. Ct. App.), review denied, 613 So.2d 8 (Fla. 1992), the appellate court approved a trial court's opinion that the term "unfair competition" within the definition of advertising injury "refers unambiguously only to actions affecting competitors."[5]

_____

[4].  We recognize that there was no finding of wrongdoing in the Tracy action.

[5].  Aamco in its brief recites that in O'Brien v. Westinghouse Elec. Corp., 293 F.2d 1 (3d Cir. 1961), we held that "claims of unfair competition do not relate exclusively to claims between

Moreover, we recently held, in interpreting section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the federal unfair competition statute, that "Congress . . . did not contemplate that federal courts should entertain claims brought by consumers." Serbin v. Ziebart Int'l Corp., 11 F.3d 1163, 1179 (3d Cir. 1993). Rather, the Lanham Act "is primarily intended to protect commercial interests and . . . section 43(a) of the statute provides a private remedy to a commercial plaintiff who meets the burden of proving that its commercial interests have been harmed by a competitor's false advertising." Id. at 1177 (citing Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc., 902 F.2d 222, 230 (3d Cir. 1990) (internal alterations omitted) (emphasis added)). We find Serbin's reasoning particularly persuasive because "the Lanham Act is derived generally and purposefully from the common law tort of unfair competition, and its language parallels the protections afforded by state common law and statutory torts" of that nature. AT&T v. Winback, 42 F.3d at 1433.

We have not overlooked Aamco's argument "that the proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured," as set

(..continued)
competitors and found that unfair competition could be successfully claimed between an employee and his employer." Brief at 22 n.2. But O'Brien is completely different from this case as it did not involve a claim by a purchaser against a vendor. Furthermore, we largely predicated our result on our observation "that all persons are free to enter the trade at any time and are therefore potential competitors." Id. at 13-14. Therefore, O'Brien does not support Aamco's claim for coverage.

forth in St. Paul Mercury Ins. Co. v. Corbett, 630 A.2d 28, 30 (Pa. Super. Ct.), dismissed without op., 634 A.2d 221 (Pa. 1993). Rather, we conclude that Aamco could not have expected to have insurance coverage for the Tracys' claims under the portion of a policy protecting it against claims of "unfair competition." As we explained above, it would be expected that a claim arising from "competition" would be forwarded by a competitor of an insured. The Tracys and the class they represented were not competitors of Aamco.

### III.

### CONCLUSION

For the foregoing reasons we will affirm the order of September 20, 1994.