WINNER INTERNATIONAL CORPORA-TION, a Pennsylvania corporation, and James E. Winner, Jr., Plaintiffs,

v.

CONTINENTAL CASUALTY COMPANY, Defendant.

Civ. A. No. 93–643.

United States District Court, W.D. Pennsylvania.

Aug. 16, 1994.

810

Douglas E. Cameron, George L. Stewart, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for plaintiffs.

Joseph S.D. Christof, II, Dickie, McCamey & Chilcote, Pittsburgh, PA, for defendant.

## MEMORANDUM

STANDISH, District Judge.

### I

In this civil action, plaintiffs, Winner International Corporation (WIC) and James E. Winner, Jr., seek a declaratory judgment regarding the duty of defendant, Continental Casualty Company, to defend and indemnify plaintiffs in connection with a diversity action filed by Charles R. Johnson against plaintiffs in the United States District Court for the Northern District of Ohio at Civil Action No. 91–2153 (the Ohio action). Plaintiffs also seek damages from defendant for breach of contract and breach of the duty of good faith and fair dealing.[1]

Presently, before the court are the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. After consideration, and for the reasons set forth below, the motion of defendant for summary judgment will be granted, and the cross-motion of plaintiffs for partial summary judgment will be denied.

---

1. Specifically, plaintiffs seek a judgment in their favor in the amount of $4,143,856.44, representing the costs incurred by plaintiffs to defend the Ohio action ($1,143,856.44) and the total of the aggregate limits of the three insurance policies issued by defendant to WIC ($3,000,000.00).

## II

The following facts are undisputed:

1. From August 1, 1986 until August 1, 1989, WIC was covered by three primary comprehensive general liability insurance policies issued by defendant. Policy No. 7 00144486 provided coverage to WIC from August 1, 1986 to August 1, 1987 (the 1986 policy); from August 1, 1987 to August 1, 1988 (the 1987 policy); and from August 1, 1988 to August 1, 1989 (the 1988 policy).[2] (Plaintiffs' Consolidated Appendix, Exhs. A, B and C).

2. On October 24, 1991, the Ohio action was filed against plaintiffs by Charles R. Johnson, asserting claims for fraud, unjust enrichment, breach of contract, an accounting and rescission. In summary, Mr. Johnson's complaint alleges the following facts:

Plaintiff, Charles R. Johnson, is a high school graduate with no formal post-high school education. Plaintiff is dyslexic.

In 1984 and 1985, plaintiff, at his own expense and in a workshop shared with his father in his parent's home, designed and built a prototype of an anti-theft device for attachment to the steering wheel of an automobile. During this time, plaintiff kept his work and the anti-theft device he designed confidential. In addition to inventing the anti-theft device, plaintiff helped coin a name for his invention—"The Club."

Plaintiff intended to market The Club for profit; however, he lacked capital and business expertise. As a result, in mid-September, 1985, plaintiff met with defendant James E. Winner to seek assistance in marketing The Club.

Plaintiff informed defendant Winner that he had a limited educational background, and that he was unable to read and comprehend what he was reading. Nevertheless, plaintiff was able to channel his energy into inventing things. Plaintiff also informed defendant Winner that he lacked the capital and business expertise necessary to patent and market The Club, and that he was looking for a trustworthy person who had a business marketing background and sufficient capital for the purpose of forming a joint venture to patent and market The Club for profit. Plaintiff also disclosed his prototype of The Club to defendant Winner, which had been kept confidential.

When they met, defendant Winner held himself out to be a skilled and trustworthy businessman with a particular expertise in the marketing and sale of products like The Club. Defendant Winner also represented that he had sufficient capital to finance the patenting and marketing of plaintiff's invention for profit, and that he was agreeable to forming a joint venture for such purpose.

It was agreed that plaintiff would contribute The Club, the costs he expended to develop The Club, and his time and talent to the joint venture. In addition, plaintiff agreed to do anything necessary to see that The Club was patented and marketed. During this time, it was agreed that plaintiff would receive $1,000.00 per month to offset giving up his then current job, thereby allowing him to devote his efforts to the furtherance of the joint venture.

It was further agreed that defendant Winner would contribute his business skill, marketing expertise and the capital necessary to obtain patents, to market The Club and to pay all expenses reasonably incurred by the parties in furtherance of their joint venture. The parties also agreed to share equally in the profits from the sale of The Club. Plaintiff believed the representations of defendant Winner to be true and he reasonably relied upon them.

Plaintiff duly performed all of the terms and conditions of the parties' agreement, including continuing to work out of his father's workshop to refine The Club;

**2.** After the expiration of the 1988 policy, WIC procured commercial general liability insurance coverage from Cincinnati Insurance Company (Cincinnati). Plaintiffs also made a demand on Cincinnati for a defense and indemnity in connection with Mr. Johnson's claims in the Ohio action. However, Cincinnati denied coverage and filed a declaratory judgment action against WIC and James E. Winner, Jr. in this court, which is presently pending at Civil Action No. 93–142.

meeting with and assisting patent lawyers retained by the joint venture; executing documents prepared by defendant Winner or the patent lawyers; building displays for trade marketing shows; attending trade marketing shows; meeting with product representatives retained by the joint venture to market The Club; assisting the company retained to manufacture The Club; and traveling to Sharon, Pennsylvania periodically to meet with and assist defendant Winner.

On November 15, 1985, the attorneys retained by the parties filed Patent Application No. 805226 with the United States Patent Office, seeking the issuance of a design patent for The Club. On April 28, 1987, Design Patent No. 289491 was issued, naming plaintiff as the inventor of The Club and defendant Winner as the assignee. Thereafter, in accordance with their agreement, the patent attorneys filed Patent Application No. 15596 with the United States Patent Office on February 17, 1987, seeking the issuance of a utility patent for The Club. On April 19, 1988, Utility Patent No. 4,738,127 was issued, naming plaintiff as the inventor of The Club and defendant Winner as the assignee. Notwithstanding the fact that plaintiff invented The Club, defendant Winner represents and holds himself out to the media and to the general public as the designer and inventor of The Club.

On or about April 28, 1986, defendant Winner formed a Pennsylvania corporation known as Winner International Corporation for the purpose of transferring to it the rights to sell The Club and for the purpose of concealing profits from the sale of The Club from plaintiff. Defendant Winner had, and continues to have, complete control of Winner International Corporation, which is his alter ego.

In late 1986, defendant Winner entered into an agreement with Sears to sell The Club to Sears for resale at Sears stores. Defendant Winner continues to sell The Club to Sears. Around this time, defendant Winner also began selling The Club to other customers, including various retailers and individuals. Around this time, defendant Winner represented to plaintiff that there would be no profits from the Sears agreement and other sales of The Club because any money generated from such sales would go to offset expenses incurred in connection with advertising The Club. He also represented that the Sears agreement would merely benefit the parties through exposure of The Club to the public. Contrary to the representations of defendant Winner, profits were realized, and continue to be realized, from the sale of The Club to Sears and others, which fact was concealed from plaintiff by defendant Winner.

Beginning in late 1987 or early 1988, and continuing to date, defendant Winner has sold The Club for profit to various retailers in addition to Sears, including Ace–Hardware, K–Mart, Venture and Montgomery Ward. He has also sold The Club through several hundred automobile dealers throughout the United States and through direct market advertising. Defendant Winner now markets various models of The Club, including The Econo Club, The Super Club, The Truck Club and The Boat Club. The various models of The Club sell at retail prices ranging from $39.00 to $99.00, and the sales result in substantial profits. From the date of the parties' agreement, defendant Winner has sold in excess of 2,000,000 clubs at a substantial profit.

Plaintiff repeatedly asked defendant Winner when he could expect to receive his share of profits from the sale of The Club in accordance with their agreement. In response, defendant Winner represented to plaintiff that the joint venture was not yet earning a profit. Therefore, plaintiff was not entitled to payment. Defendant Winner repeatedly stated and guaranteed plaintiff that sales of The Club would be highly successful; that plaintiff would reap substantial profits from such sales; and that profits would be calculated and paid on an annual basis. Despite repeated demands, plaintiff has never received any profits from the sale of The Club pursuant to the terms of the parties' agreement. (Plaintiffs' Consolidated Appendix, Exh. H).

3. In the answer to Mr. Johnson's complaint, WIC and Mr. Winner alleged that, by

written agreement dated September 13, 1985, Mr. Johnson assigned his ownership interest in The Club to Mr. Winner in return for $1,000.00 per month to be paid to Mr. Johnson as an independent contractor. (Defendant's Motion for Summary Judgment, Exh. B).

4. Plaintiffs requested a defense and indemnification in the Ohio action under the provisions of the general liability policies issued by defendant to WIC relating to "advertising injury" liability. However, the request was denied.

5. In the 1986 policy, coverage for advertising injury liability is set forth in an endorsement to the policy, which provides in relevant part:

II. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE

(A) The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

(B) This insurance does not apply:

\*   \*   \*   \*   \*   \*

(6) to advertising injury arising out of

(a) failure of performance of contract, but *this exclusion does not apply to the unauthorized appropriation of ideas based upon alleged breach of*

*implied contract,* or ... (emphasis supplied).

\*   \*   \*   \*   \*   \*

(D) Additional Definitions

"Advertising Injury" means injury *arising out of* an offense committed during the policy period *occurring in the course of the named insured's advertising activities,* if such injury *arises out* of libel, slander, defamation, violation of right of privacy, *piracy,* unfair competition, or *infringement of* copyright, *title* or slogan. (emphasis supplied).

(Plaintiffs' Consolidated Appendix, Exh. A).

6. In the 1987 and 1988 policies, coverage for advertising injury liability is included in the policies themselves, rather than by separate endorsement. The language of these policies is identical with respect to such coverage and is set forth as follows:

SECTION I—COVERAGES

\*   \*   \*   \*   \*   \*

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS— COVERAGES A AND B. We will have the right and duty to defend any "suit" seeking those damages....

\*   \*   \*   \*   \*   \*

c. This insurance applies to "advertising injury" *only if caused by an offense committed:*

(1) In the "coverage territory" during the policy period; and

(2) *In the course of advertising* your goods, products or services. (emphasis supplied)

\*   \*   \*   \*   \*   \*

2. Exclusions.

\* \* \* \* \* \*

b. "Advertising injury" arising out of:

(1) Breach of contract, *other than misappropriation of advertising ideas under an implied contract;* (emphasis supplied).

\* \* \* \* \* \*

SECTION V—DEFINITIONS

1. "Advertising injury" means injury *arising out* of one or more of the following offenses:

\* \* \* \* \* \*

c. *Misappropriation of advertising ideas* or style of doing business; or

d. *Infringement of* copyright, *title* or slogan. (emphasis supplied).

(Plaintiffs' Consolidated Appendix, Exhs. B and C).

7. In February, 1993, the Ohio action proceeded to trial, and the issues of liability and damages were bifurcated. Plaintiffs defended the Ohio action on the basis of the written contract entered into between Mr. Johnson and Mr. Winner on September 13, 1985. (Defendant's Motion for Summary Judgment, Exh. C).[3]

8. On February 17, 1993, the jury in the Ohio action determined, *inter alia,* that Mr. Winner procured the written contract with Mr. Johnson dated September 13, 1985 by fraud; that Mr. Johnson failed to prove by a preponderance of the evidence that he and Mr. Winner entered into an oral contract in late August or early September, 1985 whereby they agreed to a 50/50 split of profits; and that Mr. Winner was unjustly enriched by the benefits conferred upon him by Mr.

Johnson. (Plaintiffs' Consolidated Appendix, Exh. J).

9. After the jury's liability verdict in the Ohio action, but prior to the introduction of evidence as to damages, the parties reached a settlement in the amount of $10,500,000.00. Plaintiffs spent in excess of $1,100,000.00 to defend the Ohio action. (Plaintiffs' Consolidated Appendix, Exh. L). On April 23, 1993, plaintiffs instituted this declaratory judgment action.

### III

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. Disposition of an insurance action on summary judgment is appropriate when, as here, there are no material underlying facts in dispute, and the only contested issue involves the interpretation of the scope of coverage of an insurance contract. *McMillan v. State Mut. Life Assur. Co. of America,* 922 F.2d 1073, 1074 (3d Cir.1990), *citing, Little v. MGIC Indemnity Corp.,* 836 F.2d 789, 792 (3d Cir.1987).

After consideration of the materials submitted in support of, and in opposition to, the cross-motions for summary judgment, the court concludes that defendant was not under a duty to defend plaintiffs in the Ohio action; that plaintiffs are not entitled to indemnity from defendant for any monies paid to Mr. Johnson in settlement of the Ohio action; and that defendant is entitled to judgment as a matter of law with respect to plaintiffs' claim of bad faith. Accordingly, defendant's

---

**3.** In summary, the two-page contract provides that the intent of the agreement is to set forth the conditions of the parties' ongoing working relationship and the contributions of each party; that three products invented by Mr. Johnson, including a locking device that attaches to the steering wheel of an automobile to prevent theft, are assigned to Mr. Winner; that Mr. Johnson will devote his full-time and best efforts to the further development of existing and future products; that Mr. Johnson will receive $1,000.00 per month as a consulting fee, plus reimbursement for out-of-pocket expenses; that Mr. Johnson will also receive monies in the form of bonuses when the manufacturing and marketing of his products by Mr. Winner, who is referred to as the Company, becomes profitable; that Mr. Winner will fund the Company from personal funds or outside sources; and that Mr. Winner has the right to assign the rights of the products to a third party, which may be a partnership or a corporation. (Defendant's Motion for Summary Judgment, Exh. C).

motion for summary judgment will be granted and plaintiffs' cross-motion will be denied.

## IV

*Duty to Defend*

■ Under Pennsylvania law,[4] an insurance company is obligated to defend an insured whenever the complaint filed by the injured party against the insured may *potentially* come within the policy's coverage. The obligation to defend is determined solely by the allegations of the underlying complaint. *See, e.g., Pacific Indem. Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985). It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend. *D'Auria v. Zurich Ins. Co.,* 352 Pa.Super. 231, 507 A.2d 857 (1986), *quoting, Springfield Twp. v. Indemnity Ins. Co. of North America,* 361 Pa. 461, 64 A.2d 761 (1949).

■ Plaintiffs assert that, according to Mr. Johnson's complaint in the Ohio action, Mr. Winner "committed various acts through the marketing and selling of The Club which constitute 'piracy,' 'idea misappropriation,' 'misappropriation of advertising ideas,' and 'infringement of title' within the meaning and scope of the 'advertising injury' coverage afforded by the respective policies." It is ar-

gued that, because the claims asserted against plaintiffs potentially came within the scope of defendant's policies, defendant had a duty to defend plaintiffs against those claims, and that its failure to do so was a breach of contract. (Plaintiffs' Brief in Support, p. 12). The court does not agree.

With respect to the advertising injury offenses relied upon by plaintiffs, "piracy" is the wrongful taking or misappropriation of an idea or invention; "infringement of title" is the violation of another's legal ownership of, or legal right to, a distinctive appellation;[5] and "misappropriation of advertising ideas" means to take advertising ideas dishonestly, especially for one's own use. (Plaintiffs' Brief in Support, pp. 10, 25 and 37). A review of Mr. Johnson's complaint, however, fails to reveal any allegation that Mr. Winner misappropriated The Club or violated Mr. Johnson's legal right to the name "The Club"[6] or misappropriated an advertising idea belonging to Mr. Johnson. In fact, it is clear from Mr. Johnson's complaint that he specifically sought Mr. Winner's assistance in marketing The Club due to his lack of business expertise, and that he knowingly and voluntarily assigned his patent rights in The Club to Mr. Winner to facilitate the marketing of the product.[7]

---

4. The parties agree that Pennsylvania law governs this insurance dispute.

5. With respect to the offense of infringement of title, plaintiffs rely on the allegations in paragraphs 9 and 22 of Mr. Johnson's complaint, which provide:

* * * * * *

9. In addition to inventing the aforementioned automobile anti-theft device, Plaintiff, CHARLES R. JOHNSON, helped coin a name for his invention, viz., "The Club."

* * * * * *

22. Notwithstanding Plaintiff's having invented The Club, as set forth in Exhibits "1" and "2", on information and belief, Defendant, JAMES E. WINNER, represents and holds himself out to the media, and the general public as the designer and inventor of The Club.

* * * * * *

Assuming, *arguendo,* that these allegations could be construed as stating a claim for infringement of title, the court notes that Mr. Johnson fails to allege any damage as a result of this alleged conduct in the complaint.

6. In support of the argument that Mr. Johnson's complaint alleged a claim for infringement of title, plaintiffs rely on *Merchants Co. v. American Motorists Co.,* 794 F.Supp. 611 (S.D.Miss.1992). However, such reliance is misplaced. In *Merchants,* the district court held, *inter alia,* that an insured's actions in using without right, license or permission the customer list of a third party might be characterized as infringement of title for purposes of advertising injury coverage. The key to the decision in *Merchants* was the allegation that the insured improperly acquired, i.e., misappropriated, the customer list. No such allegation exists in the present case.

7. The court's conclusion with respect to the enumerated advertising injury offenses relied upon by plaintiffs is also dispositive of plaintiffs' arguments regarding the exceptions to the breach of contract exclusions from coverage for advertising injury liability in the policies. Specifically, under the 1986 policy, plaintiffs would be entitled to coverage for the "unauthorized appropriation of ideas based upon alleged breach of implied contract," and under the 1987 and 1988 policies, plaintiffs would be entitled to coverage for the

Simply put, Mr. Johnson's complaint in the Ohio action cannot be construed as alleging claims relating to Mr. Winner's *unauthorized* marketing and sale of The Club. The only aspect of Mr. Winner's conduct that could be construed as unauthorized was his retention of the profits from the sale of The Club. Therefore, the court concludes that the nature of the claims asserted in the Ohio action are properly characterized as claims for breach of contract, unjust enrichment and fraud, which do not fall within any of the enumerated advertising injury offenses set forth in defendant's policies. Under the circumstances, Mr. Johnson's claims were not potentially within the coverage provided by defendant's policies for advertising injury liability and the request for a defense was properly denied.

· One further point should be ·addressed. With respect to coverage for advertising injury liability, the 1986 policy requires the commission of an enumerated offense "in the course of the named insured's advertising activities," and the 1987 and 1988 policies require the commission of an enumerated offense "in the course of advertising goods, products or services." (Plaintiffs' Consolidated Appendix, Exhs. A, B and C).

■ Assuming, *arguendo*, that the allegations of Mr. Johnson's complaint could be construed as setting forth a claim for one of the enumerated advertising injury offenses in defendant's policies, Mr. Johnson's complaint fails to allege the commission of an enumerated offense in the course of plaintiffs' advertising activities. In this connection, the court agrees with the greater weight of authority that there must be some causal connection between the injury alleged and the advertising activities of the insured to invoke adver-

tising injury coverage. *See Sentry Ins. v. R.J. Weber Co., Inc.,* 2 F.3d 554, 557 (5th Cir.1993); *Lazzara Oil Co. v. Columbia Casualty Co.,* 683 F.Supp. 777, 780 (M.D.Fla. 1988), *aff'd,* 868 F.2d 1274 (11th Cir.1989); *St. Paul Fire and Marine Ins. Co. v. Advanced · Interventional Systems, Inc.,* 824 F.Supp. 583, 586 (E.D.Va.1993); *National Union Fire Ins. Co. v. Siliconix, Inc.,* 729 F.Supp. 77, 79–80 (N.D.Ca.1989); *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545, 558–559 (1992); *International Ins. Co. v. Florists' Mut. Ins. Co.,* 201 Ill.App.3d 428, 147 Ill.Dec. 7, 559 N.E.2d 7 (1990); *A. Meyers & Sons Corp. v. Zurich American Ins. Group,* 74 N.Y.2d 298, 546 N.Y.S.2d 818, 545 N.E.2d 1206 (1989).[8] Accordingly, the failure of Mr. Johnson's complaint to allege any causal connection between his injury and plaintiffs' advertising activities provided an independent basis for defendant's denial of plaintiffs' request for a defense in the Ohio action.[9]

*Duty to Indemnify*

■ · While an insurer must defend its insured if the complaint alleges conduct that *potentially* falls within the scope of the policy, it must indemnify its insured only if liability is found for conduct that *actually* falls within the scope of the policy. *Allstate Ins. Co. v. Brown,* 834 F.Supp. 854, 857 (E.D.Pa.1993).

■ As noted above, the jury in the Ohio action returned a verdict of liability only as to Mr. Johnson's claim for unjust enrichment. In seeking indemnification for the monies paid to Mr. Johnson to settle the Ohio action, plaintiffs assert that the jury's verdict on the unjust enrichment claim establishes plaintiffs' liability for "the unautho-

"misappropriation of advertising ideas under an implied contract." Again, a review of the complaint fails to reveal any allegation that Mr. Winner's conduct with respect to the marketing and sale of The Club was unauthorized or that he misappropriated The Club or an advertising idea belonging to Mr. Johnson.

**8.** As the parties noted in their briefs, it appears that there is no Pennsylvania case law addressing the issue of coverage for advertising injury liability.

**9.** In support of its motion for summary judgment, defendant also argued that the activities of plaintiffs which gave rise to Mr. Johnson's complaint occurred before defendant was the insurer of WIC and that fraudulent acts are not covered by the policies in question. Based on the court's conclusion that Mr. Johnson's complaint failed to allege a claim for an enumerated advertising injury offense or a causal connection between an enumerated offense and Mr. Johnson's injury, the court will not address these alternative arguments.

rized use and misappropriation of Johnson's ideas and inventions, including advertising and marketing ideas, based upon an implied contract." (Plaintiffs' Brief in Support, pp. 12–13). Such a finding would entitle plaintiffs to coverage under the exceptions to the exclusions from advertising injury liability for breach of contract which are set forth in defendant's policies.

Although unjust enrichment has been defined as an implied contract, the court agrees with defendant that Mr. Johnson's claim of unjust enrichment was not in the nature of a breach of implied contract based upon a misappropriation of ideas. Rather, Mr. Johnson's unjust enrichment claim was based upon Mr. Winner's refusal to share the profits from the marketing and sale of The Club. (Defendant's Brief in Support, p. 47). It is clear that Mr. Johnson was not claiming that WIC and Mr. Winner were unjustly enriched by his advertising ideas because Mr. Johnson had no advertising ideas. Moreover, Mr. Johnson was not claiming the unauthorized appropriation of an idea because Mr. Johnson admittedly gave his idea for The Club to Mr. Winner through the assignment of the patent rights in The Club.

Under the circumstances, the court concludes that the conduct of plaintiffs for which liability was actually found was not within the scope of defendant's policies. Therefore, defendant is not under a duty to indemnify plaintiffs for any of the monies paid to Mr. Johnson to settle the Ohio action.

*Bad Faith*

■ Turning to plaintiffs' bad faith claim, in *Coyne v. Allstate Ins. Co.,* 771 F.Supp. 673 (E.D.Pa.1991), an insured brought suit against a homeowner's insurer alleging, *inter alia,* bad faith in denying coverage for a property damage claim. The court discussed the meaning of "bad faith" as follows:

\* \* \* \* \* \*

In the insurance context, the phrase "bad faith" has acquired a peculiar and universally acknowledged meaning.

> *Insurance.* "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraud-

ulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

Black's Law Dictionary 139 (6th ed. 1990) (citations omitted). *See, e.g., Washington v. Group Hospitalization, Inc.,* 585 F.Supp. 517, 520 (D.D.C.1984) ("Many jurisdictions have recognized a cause of action in tort for the bad faith refusal of an insurer to pay.... To recover under the tort of bad refusal to pay, plaintiff must show that defendant did not have a reasonable basis for denying benefits under the policy and that it knew or recklessly disregarded its lack of a reasonable basis when it denied the claim"); Appleman & Appleman, *Insurance Law & Practice* § 1612 at 368 (1967 and Supp.1990) (citing cases) ("[B]ad faith means any frivolous or unfounded refusal to pay; it is not necessary that such refusal be fraudulent").

771 F.Supp. at 677–678.

Defendant asserts that plaintiffs' bad faith claim is frivolous and wholly without merit because defendant was within its legal rights in declining a defense and indemnity in the Ohio action. In support of this argument, defendant notes that it sought opinions from two different law firms on three separate occasions to assist it in making its determination regarding coverage for the Ohio action. (Defendant's Motion for Summary Judgment, Exh. D). All of the coverage opinion letters indicated that the allegations of Mr. Johnson's complaint did not give rise to coverage under defendant's policies.

After consideration, the court concludes that plaintiffs have failed to raise an issue of fact with respect to the issue of defendant's bad faith, and that the evidence presented by defendant establishes that its denial of a defense and indemnity in the Ohio action was not frivolous or unfounded or motivated by ill will. Accordingly, judgment will be entered in favor of defendant and against plaintiffs on the bad faith claim.

An order follows.

*ORDER*

AND NOW, this 16th day of August, 1994, in accordance with the foregoing memorandum, it is hereby ORDERED as follows:

1. The motion of defendant, Continental Casualty Company, for summary judgment pursuant to Fed.R.Civ.P. 56 is granted.

2. The motion of plaintiffs, Winner International Corporation and James E. Winner, Jr., for partial summary judgment pursuant to Fed.R.Civ.P. 56 is denied.

3. The Clerk shall enter judgment in favor of defendant and against plaintiffs.