The FROG, SWITCH &
MANUFACTURING
CO., INC., Plaintiff,

v.

The TRAVELERS INSURANCE
COMPANY, Defendant.

The Frog, Switch & Manufacturing
Co., Inc. Plaintiff,

v.

United States Fire Insurance
Company, Defendant.

Civ. A. Nos. 1:CV–98–0643, 1:CV–98–0758.

United States District Court,
M.D. Pennsylvania.

Sept. 21, 1998.

R. James Reynolds, Jr., Reynolds & Havas, Harrisburg, PA, for Plaintiff.

Kevin P. Lucas, Manion, McDonough & Lucas, Pittsburgh, PA, William T. Corbett, Shanley & Fisher, P.C., Morristown, NJ, for Defendant, Travelers Ins. Co.

Francis J. Deasey and Pamela J. Devine, Deasey, Mahoney and Bender, Ltd., Philadelphia, PA, for Defendant U.S. Fire Ins. Co.

### MEMORANDUM

CALDWELL, District Judge.

#### I. *Introduction*

These are breach of contract claims in which the plaintiff, The Frog, Switch & Manufacturing Co. ("Frog"), brought suit against the defendants, United States Fire Insurance Company ("USFIC") and The Travelers Indemnity Company of Illinois ("Travelers") for failing to defend and indemnify it for liability arising from a lawsuit filed against Frog by ESCO Corporation ("ESCO"). Frog further alleges a bad faith denial of coverage under 42 Pa.C.S. § 8371.

We are considering USFIC's motion to dismiss under Fed.R.Civ.P. 12(b)(6) which asserts that the plaintiff has failed to state a claim for which relief can be granted. In deciding this motion, "all facts alleged in the complaint and all reasonable inferences that can be drawn from them must be accepted as true." *Malia v. General Elec. Co.*, 23 F.3d 828, 830 (3d Cir.1994). The motions must be denied unless the plaintiff can prove no set of facts in support of its claim that would entitle it to recovery. *See Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255 (3d Cir.1994). We consider not only the complaint but also the insurance policies and the complaint in the underlying lawsuit by ESCO, which are attached to the complaint. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993).

In addition, we are considering Travelers' motion for summary judgment and Frog's cross motion for partial summary judgment, which concerns Travelers' duty to defend. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.* at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted).

When a moving party has carried his or her burden under Rule 56, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted). The nonmoving party "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment," and cannot "simply reassert factually unsupported allegations contained in [the] pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citation omitted). "If the [non-

moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986) (citations omitted).

The defendants argue that the claims made against plaintiff in the ESCO lawsuit were not within the coverage afforded under their respective policies, including any duty to defend. This is the dispute we must resolve.

## II. *Background.*

### A. *ESCO Litigation.*

On July 17, 1995, ESCO filed a complaint in this court (Civil Docket No. 1:CV–95–1153) against Frog and its employee, John R. Olds ("Olds"). ESCO alleged that Olds, who had been a chief engineer for Amsco Cast Products, Inc. ("Amsco"), copied and removed from Amsco's offices trade secret and confidential business information relating to Amsco's product line of dipper buckets (used in the mining industry) and delivered them to Frog.[1] Olds had agreed in August 1994 to accept·employment with Frog but did not notify Amsco of this fact until the day he started work with Frog, on October 17, 1994. He allegedly took certain documents from Amsco shortly before his departure. ESCO filed suit.

ESCO alleged that Frog used trade secrets and confidential information it acquired to enter the market for dipper buckets, a line of business in which Frog had not previously engaged. ESCO's initial complaint, filed on July 17, 1995, alleged six claims against Frog, all pertaining to unfair competition. On September 30, 1996, ESCO filed an amended complaint that added four claims, including two for violations of the Lanham Act, 15 U.S.C. § 1125(a) (1988).

The Lanham Act claims alleged false advertising by Frog. ESCO alleged that Frog promoted its dipper buckets through "widespread distribution of a product promotional brochure, publication in an industry trade journal, and verbal and written direct communication to customers." According to ESCO, Frog advertised "a new and 'revolutionary' design" for dipper buckets although Frog had done no design work, but was instead attempting to sell buckets designed with drawings "unlawfully appropriated" from Amsco. ESCO further alleged that the products sold by Frog were in fact Amsco products which Frog was attempting to pass off as its own and that "[t]he market was falsely led to believe" that Frog designed the buckets and could produce them.

Just before trial, Frog reached a settlement agreement with ESCO, agreeing to pay $2,625,000 to settle all claims raised by ESCO.

### B. *Denial of Insurance Coverage.*

Frog has insurance policies with Travelers and USFIC. The Travelers policy provides general liability coverage while the USFIC policy is an umbrella policy. These policies were in effect during the litigation between Frog and ESCO.

The Travelers and USFIC policies provide coverage for "advertising injury." The Travelers policy covers injury that is "caused by an offense committed in the course of advertising your goods, products or services," while the USFIC policy covers "injury that arises out of [Frog's] advertising activities." The policies further define "advertising injury" as injury arising from one of the following:

a. Oral or written publication of material that slanders or libels a person or organization or disparage a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

When the coverage applies, Travelers and USFIC agreed to pay damages that the insured may be required to pay for advertising

---

1. ESCO purchased Amsco's dipper bucket product line in January 1995.

injury, subject to the limits under each policy. Additionally, Travelers and USFIC assume "the right and duty to defend" a lawsuit requesting damages. Coverage under the Travelers policy is limited to $1,000,000. The USFIC policy provides coverage that exceeds the limit of the Travelers policy.

Frog notified USFIC and Travelers of the ESCO litigation and requested that they defend and indemnify Frog and Olds. These requests were denied.

### C. *The Complaints.*

In its complaints, Frog asserts claims for breach of contract (Count One) and bad faith under 42 Pa.C.S. § 8371 (Count Two). In Count One, Frog alleges that the claims asserted by ESCO were advertising injuries covered—or at least potentially covered—under the two policies. Frog alleges that the injuries claimed by ESCO were the result of Frog's "false advertising ... which ... constitute[s] misappropriation of advertising ideas or style of doing business, infringement of copyright, title or slogan, and/or disparagement of its goods, products or services." The alleged injuries suffered by ESCO occurred "in the course of Frog's advertising, marketing and promotion" of the dipper buckets. Because these injuries fell within the definition of advertising injury, Frog claims that the defendants breached their duties to defend and indemnify Frog.

Frog seeks to recover the cost of its settlement with ESCO and related expenses. In its bad faith claim Frog seeks punitive damages under 42 Pa.C.S. § 8371.

## II. *Discussion.*

### A. *Breach of Contract*

The duty to defend under an insurance contract is broader than the duty to indemnify, and encompasses *any* claim against the insured which could *potentially* fall under the Policy. *American Contract Bridge League v. Nationwide Mut. Fire Ins. Co.,* 752 F.2d 71, 75 (3d Cir.1985); *Heffernan & Co. v. Hartford Ins. Co.,* 418 Pa.Super. 326, 332, 614 A.2d 295, 298 (1992). An insurer has the duty to defend so long as the allegations in the complaint aver facts that would support a recovery that the policy covers. *Erie Ins. Exchange v. Transamerica Ins. Co.,* 516 Pa. 574, 583, 533 A.2d 1363, 1368 (1984). Even if only one of several claims could potentially be covered, the insurer has the duty to defend all claims raised against the insured "until it is obvious that no possibility of recovery exists as to claims within the policy provisions." *DecisionOne Corp. v. ITT Hartford Ins. Group,* 942 F.Supp. 1038, 1041 (E.D.Pa.1996).

Whether a claim potentially falls within the policy must be determined by examining the four corners of the complaint. Frog suggests that an insurer has a duty to defend even if the complaint "could be reasonably amended to state a claim under the policy." *Safeguard Scientifics, Inc. v. Liberty Mut. Ins. Co.* 766 F.Supp. 324, 330 (E.D.Pa.1991), *aff'd in part, rev'd in part,* 961 F.2d 209 (3d Cir.1992 (table). Subsequent decisions by the Pennsylvania Superior Court and the Pennsylvania Eastern District Court have rejected this approach and held that the current view under Pennsylvania law is to determine coverage by examining the allegations of the complaint. *See I.C.D. Indus., Inc. v. Federal Ins. Co.,* 879 F.Supp. 480, 487–88 (E.D.Pa.1995); *Britamco Underwriters, Inc. v. C.J.H., Inc.,* 845 F.Supp. 1090, 1094 (E.D.Pa.1994); *Scopel v. Donegal Mut. Ins. Co.,* 698 A.2d 602, 607 (Pa.Super.1997). Any ambiguity in the policy should be construed in favor of the insured. *DecisionOne Corp.,* 942 F.Supp. at 1041 (citing *Pacific Indem. Co. v. Linn,* 766 F.2d 754, 760–61 (3d Cir.1985)).

To determine whether either company had a duty to defend Frog, it is necessary to determine whether ESCO's allegations of unfair competition and/or Lanham act violations could potentially be advertising injury covered under the policies. In order to be covered,

(1) the injury must be committed in the course of advertising the insured's goods, products, or services;

(2) the injury must arise out of the offenses enumerated in the advertising injury definition;

(3) the injury must be caused by the offense committed in the course of advertising; and

(4) the offense must be committed during the policy period.

*DecisionOne Corp.*, 942 F.Supp. at 1042. The fourth requirement is not in dispute.

### 1. *During the Course of Advertising*

■ The ESCO complaint asserted claims for misappropriation of trade secrets, unfair competition, and false advertising as a result of Frog's alleged misappropriation of dipper bucket drawings. The buckets produced using these drawings were then advertised by Frog. In the context of a claim that a patent infringement was the advertising injury of "piracy," the Eastern District of Pennsylvania stated that one must consider what "piracy" in the course of advertising means in the context of the insurance policy, not just what the term itself means. Thus, " 'piracy means misappropriation or plagiarism found in the elements of the advertisement itself—in its text form, logo, or pictures—rather than in the product being advertised.' " *Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F.Supp. 423, 428 (E.D.Pa.1994) (internal quotation marks omitted) (quoting *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506 (9th Cir. 1994)), *aff'd*, 60 F.3d 813 (3d Cir.1995) (table). ESCO claimed that Frog misappropriated its *product*, not its *advertising*. ESCO never alleged that Frog misappropriated the "text form, logo or pictures" of an ESCO (or Amsco) advertisement. Rather, Frog advertised a product that had been misappropriated, so the injury to ESCO did not occur during the course of advertising.

### 2. *Definition of Advertising Injury*

■ To support its allegation that the unfair competition claims fall within the definition of advertising injury, Frog relies on *Sentex Sys., Inc. v. Hartford Accident & Indem. Co.*, 882 F.Supp. 930, 941 (C.D.Cal. 1995), *aff'd*, 93 F.3d 578 (9th Cir.1996), which held that the term "misappropriation of advertising ideas" was "intended to encompass the common law tort of 'unfair competition.' " This broad interpretation has been rejected by other courts, however. *Simply Fresh Fruit, Inc. v. Continental Ins. Co.*, 94 F.3d 1219, 1222 (9th Cir.1996); *Microtec Research, Inc. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968, 971 (9th Cir.1994). As the court stated in *Microtec*, "[i]f the tortfeasor does some wrongful act and then advertises it, harm caused by the wrongful act alone is not within the scope of the term advertising injury." *Microtec*, 40 F.3d at 971.

In alleging that the false advertising claims fall within the definition of advertising injury, Frog argues that the injury suffered by ESCO is similar to that discussed in *DecisionOne*, in which the court did find an advertising injury. In that case, however, the injury fell within the "disparagement" clause of the advertising injury definition, because advertisements by the plaintiff "made false and misleading comparisons" with a competitor from whom the plaintiff had acquired trade secrets. *DecisionOne*, 942 F.Supp. at 1043. Frog, however, promoted its "new and 'revolutionary' design" but made no comparisons to its competitors' product. The injury suffered by ESCO is more like that described in *Brotech*, in which the court found no advertising injury when Brotech advertised products made by improperly using a competitor's patents. *See Brotech*, 857 F.Supp. at 428–29.

As stated in *Applied Bolting Tech. Prods, Inc. v. United States Fidelity & Guar. Co.*, 942 F.Supp. 1029, 1034 (E.D.Pa.1996), *aff'd*, 118 F.3d 1574 (3d Cir.1997) (table), "the courts that have considered the meaning of 'misappropriation of advertising ideas' have defined it as 'the wrongful taking of the manner by which another advertises its goods or services.' " (quoting *Union Ins. Co. v. The Knife Co.*, 897 F.Supp. 1213, 1216 (W.D.Ark.1995) (citing *J.A. Brundage Plumbing v. Massachusetts Bay Ins.*, 818 F.Supp. 553, 557 (W.D.N.Y.1993), *vacated following settlement*, 153 F.R.D. 36, 38 (W.D.N.Y.1994)); *Fluoroware, Inc. v. Chubb Group of Ins. Cos.*, 545 N.W.2d 678, 682 (Minn.App.Ct.1996) ("the wrongful taking of another's manner of advertising.") (citations omitted)). Because Frog did not take from ESCO its "manner of advertising," the injury does not fall within the definition of advertising injury.

803

### 3. Injury Caused by Advertising

In order for a policy to provide coverage for advertising injury, "there must be some causal connection between the injury alleged and the advertising activities of the insured." *Winner Int'l Corp. v. Continental Cas. Company*, 889 F.Supp. 809, 816 (W.D.Pa.1994) (citations omitted), *aff'd sub nom., Cincinnati Ins. Co. v. Winner Int'l Corp.*, 54 F.3d 767 (3d Cir.1995) (table). Merely advertising a misappropriated product does not cause an advertising injury. *See Simply Fresh Fruit, Inc.*, 94 F.3d at 1223 ("the *advertising activities* must *cause* the injury—not merely expose it"); *Brotech*, 857 F.Supp. at 429; *Fluoroware*, 545 N.W.2d at 682. ESCO's injuries were caused by Frog's misappropriation of dipper bucket designs, not by Frog's advertisement of the buckets it made by using those designs.

The injury alleged by ESCO in the underlying litigation did not occur during the course of Frog's advertising, does not fall within the definition of advertising injury in the defendants' policies, and was not caused by Frog's advertising. We conclude Travelers and USFIC did not breach their duties to defend or indemnify Frog.

### B. Bad Faith

42 Pa.C.S. § 8371 provides: "In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may" award interest on the claim, punitive damages, and court costs and attorney fees. 42 Pa.C.S. § 8371. To prevail under the bad faith statute, a plaintiff must prove by clear and convincing evidence: "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir.1997) (citing *Terletsky v. Prudential Property & Cas. Ins. Co.*, 437 Pa.Super. 108, 125, 649 A.2d 680, 688 (1994)). Claims for a denial of coverage in bad faith are dismissed when there is no duty to defend or indemnify. *Hyde Athletic Indus., Inc. v. Continental Cas. Co.*, 969 F.Supp. 289, 306 (E.D.Pa.1997) (citing *Kiewit Eastern Co., Inc. v. L & R*

*Const. Co., Inc.*, 44 F.3d 1194, 1206 n. 39 (3d Cir.1995); *Lucker Mfg. v. The Home Ins. Co.*, 23 F.3d 808, 821 n. 19 (3d Cir.1994)).

Because Travelers and USFIC had no duty to defend or indemnify Frog, there clearly was "a reasonable basis for denying benefits" and Frog's bad faith claim must be denied and dismissed.

We will issue an appropriate order.